**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-30017-sgj** |
| **1NONLY PHIMAR LLC,** *et al.*[1] | § | |
| | § | **Chapter 11** |
| Debtors. | § | **(Jointly Administered)** |

---

### DEBTORS' PLAN OF LIQUIDATION

---

Dated: April 1, 2024

*/s/ Megan F. Clontz*

Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com

**COUNSEL FOR THE DEBTOR AND**
**DEBTOR-IN-POSSESSION**

---

1 The Debtors in these chapter 11 cases are 1Nonly PhiMar, LLC (the last four digits of its federal tax identification number are 4226) and PhiMars Square, LLC (the last four digits of its federal tax identification number are 3404).

## TABLE OF CONTENTS

**ARTICLE I SUMMARY OF THE PLAN** ................................................................. 1

    1.1    Overview of the Plan.. ................................................................. 1

    1.2    Exhibits and Plan Supplement. ................................................ 1

    1.3    Definitions. ................................................................................ 1

    1.4    Voting Procedures. .................................................................. 2

**ARTICLE II HISTORY OF BUSINESS AND DISCLOSURES** ............................ 2

    2.1    History and Background of the Debtors. ................................. 2

    2.2    Reasons for Filing. .................................................................. 2

    2.3    Sale of Debtors' Assets. .......................................................... 2

**ARTICLE III LIQUIDATION ANALYSIS** ............................................................ 3

    3.1    Liquidation Analysis. .............................................................. 3

**ARTICLE IV FINANCIAL PROJECTIONS** ........................................................... 3

    4.1    Financial Projections. .............................................................. 3

**ARTICLE V DESIGNATION OF CLASSES OF CLAIMS** .................................. 3

    5.1    Designation of Classes of Claims. .......................................... 4

    5.2    Unclassified Claims. ............................................................... 4

    5.3    Classified Claims and Interests. ............................................. 4

**ARTICLE VI PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS** ...................................................... 4

    6.1    Administrative Claim Applications and Deadline. ................. 4

    6.2    Treatment of Administrative Claims.. ..................................... 4

    6.3    Treatment of Professional Claims. .......................................... 5

    6.4    Priority Tax Claims. ................................................................ 5

    6.5    Payment of Statutory Fees. ..................................................... 5

**ARTICLE VII TREATMENT OF CLASSES OF CLAIMS AND INTERESTS** .............. 5

    7.1    Secured Claims.. ..................................................................... 5

    7.2    General Unsecured Claims.. .................................................... 6

    7.3    Insider Claims. ........................................................................ 6

    7.4    Equity Interests. ...................................................................... 6

**ARTICLE VIII MEANS OF IMPLEMENTING THE PLAN** ................................ 6

    8.1    Continued Existence of the Liquidating Debtors. ................... 6

8.2     Sale of Assets. ................................................................................................ 6

8.3     Establishment of Reserve Accounts ............................................................... 7

        8.3.1   Senior Claim Reserve.. ...................................................................... 7

        8.3.2   Unsecured Distribution Reserve. ........................................................ 7

8.4     Payment Administrator.. .................................................................................. 7

8.5     Compromises and Settlements.. ....................................................................... 7

8.6     Corporate Action. ............................................................................................ 7

8.7     Documents.. ..................................................................................................... 8

8.8     Post-Effective Date Management.. .................................................................. 8

8.9     Preservation of Causes of Action and Rights.. ............................................... 8

8.10    Conditions to Effective Date. .......................................................................... 9

8.11    Waiver of Conditions Precedent.. .................................................................... 9

**ARTICLE IX PROVISIONS FOR THE ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................... 9

9.1     General Rejection of Executory Contracts and Leases. ................................... 9

9.2     Claims for Damages. ...................................................................................... 10

**ARTICLE X RESOLUTION OF UNDETERMINED CLAIMS** ........................................... 10

10.1    Standing. ......................................................................................................... 10

10.2    Effect of Bar Date.. ........................................................................................ 10

10.3    Amendments to Claims; Claims Filed After the Confirmation Date................... 10

10.4    Objection Deadline. ........................................................................................ 10

10.5    Creditor Response to Objection.. .................................................................... 11

10.6    No Payment Pending Allowance. ................................................................... 11

10.7    Allowance of Claims. ..................................................................................... 11

10.8    Estimation of Claims. ..................................................................................... 11

**ARTICLE XI DISTRIBUTION PROCEDURES** ..................................................................... 11

11.1    Record Date for Claims.. ................................................................................ 12

11.2    Form of Distributions. .................................................................................... 12

11.3    Conditions to Distributions; Warranty of Entitlement. ................................. 12

11.4    Withholding Taxes. ........................................................................................ 12

11.5    Setoffs. ............................................................................................................ 12

11.6    Rounding. ........................................................................................................ 12

11.7    *De Minimis* Distributions. .............................................................................. 12

11.8    Undeliverable and Unclaimed Distributions.......................................... 12

11.9    Disputed Distributions. ....................................................................... 13

**ARTICLE XII EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION, AND
EXCULPATIONS ........................................................................ 13**

12.1    Notice of the Effective Date.. ............................................................. 13

12.2    Binding Effect of Plan. ...................................................................... 14

12.3    Discharge of Debtors. ........................................................................ 14

12.4    Injunction Against Interference with Plan. ......................................... 14

12.5    Exculpations...................................................................................... 14

**ARTICLE XIII MODIFICATION OF THE PLAN.............................................. 15**

13.1    Amendments Prior to Confirmation Date. .......................................... 15

13.2    Amendments After Confirmation Date................................................ 15

13.3    Effect on Claims.. .............................................................................. 15

**ARTICLE XIV RETENTION OF JURISDICTION .............................................. 15**

14.1    Purposes. ........................................................................................... 15

14.2    Exclusive Jurisdiction. ....................................................................... 16

14.3    Abstention.. ....................................................................................... 17

**ARTICLE XV GENERAL PROVISIONS.......................................................... 17**

15.1    Certain Rights Unaffected................................................................... 17

15.2    Incorporation of Valuation Motion...................................................... 17

15.3    Automatic Stay................................................................................... 17

15.4    Reservation of Rights.......................................................................... 17

15.5    Rights Under 1191(b).. ...................................................................... 17

15.6    Headings. ........................................................................................... 17

15.7    Severability. ....................................................................................... 17

15.8    Governing Law. .................................................................................. 17

15.9    Successors and Assigns........................................................................ 18

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-30032-sgj** |
| **1NONLY PHIMAR LLC** | § | |
| | § | **Chapter 11** |
| Debtors. | § | |
| | § | |

**DEBTORS' PLAN OF LIQUIDATION**

    1Nonly PhiMar LLC ("1NOnly Phimar") and PhiMars Square, LLC ("Phimars Square," and collectively with 1NOnly Phimar, the "Debtors"), debtors and debtors-in-possession in the above referenced bankruptcy case, hereby file their proposed Plan of Liquidation (together with all amendment and modifications thereto, the "Plan"), pursuant to 11 U.S.C. §§ 1189 and 1190.

**ARTICLE I
SUMMARY OF THE PLAN**

    1.1    <u>Overview of the Plan</u>.  The Plan provides for the distribution of proceeds from a sale of the Debtors' assets conducted pursuant to section 363 of the Bankruptcy Code and payment of the Debtors' creditors as described herein. The Plan was developed by the Debtors and proposes, among other things, the means by which all Claims against the Debtors will be finally resolved and treated for distribution purposes, consistent with the provisions and priorities mandated by the Bankruptcy Code.  The Plan is essentially a new contract between the Debtors and its Creditors, proposed by the Debtors to its Creditors for approval.  Creditors approve or disapprove of the Plan by voting their Ballots on the Plan, if they are in a Class entitled to vote, and, if appropriate, by objecting to confirmation of the Plan.  However, the Plan can be confirmed by the Bankruptcy Court even if less than all Creditors or Classes accept the Plan and, in such an instance, the Plan will still be binding on those Creditors or Classes that reject the Plan.  Approval and consummation of the Plan will enable the Bankruptcy Case to be finally concluded.

    1.2    <u>Exhibits and Plan Supplement</u>.  All exhibits are incorporated into and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtors' counsel.  Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtors expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify, or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

    1.3    <u>Definitions</u>.  Definitions and Rules of Interpretation and Computation of Time are attached hereto as **Exhibit A**.

1.4    Voting Procedures.  YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. Voting procedures and Ballots are attached hereto as **Exhibit B**.

## ARTICLE II
## HISTORY OF BUSINESS AND DISCLOSURES

2.1    History and Background of the Debtors.  1Nonly Phimar is a single-member Texas limited liability company formed in 2019. Its sole member is Piermont Court, LLC, which is solely owned by HighGarden LLC., which is held by The Philip Levine Trust (the "Levine Trust"). Phimars Square is also a single-member Texas limited liability company formed in 2019, and its sole member is Piermont Court, LLC. Philip Levine ("Levine") has served as Manager of both Debtors since their formation in 2019. As of the Petition Date, 1Nonly Phimar owned a full-service hotel, the IBAN Dallas Park Central Hotel, a member of the Trademark Collection by Wyndham, located at 8051 Lyndon B. Johnson Freeway, Dallas, Texas 75251 (the "Hotel Property"), and conveniently located near the intersection of I-635 and State Highway 75 in Dallas, Texas.  The Hotel Property was last renovated in 2016, is well-maintained, and features 160 guest rooms, a restaurant and lounge, 3,980 square feet of meeting space, an outdoor pool, a fitness room, a business center, a market pantry, a guest laundry room, an outdoor patio and gazebo, and other amenities consistent with a midscale full-service hotel.  As of the Petition Date, Phimars Square owned a vacant parcel of commercial land of approximately 8,773 square feet, which is adjacent and connected to the Hotel Property. The parcel has an address of 8051 Lyndon B. Johnson Freeway, Dallas, Texas 75251 (the "Phimars Square Property," and collectively with the Hotel Property, the "Real Property") and includes access to the Lyndon B. Johnson Freeway access road.

2.2    Reasons for Filing.  The Debtors Filed for relief under the SBRA provisions of Chapter 11 of the Bankruptcy Code ("Subchapter V") on January 1, 2024 (the "Petition Date"). Prior to the Petition Date, the Debtors experienced multiple setbacks related to a broken reservation system following a 2021 rebrand from the Best Western Plus Dallas Hotel & Conference Center to the IBAN Dallas Park Central Hotel under the Trademark Collection by Wyndham flag. Under the TMH Worldwide, LLC Membership Agreement (the "Franchise Agreement") between 1Nonly Phimar and TMH Worldwide, LLC ("Wyndham"), 1Nonly Phimar was obligated to participate in Wyndham's reservation system exclusively, with all software licensed and maintained by Wyndham or its approved suppliers. 1Nonly Phimar experienced many instances of the hotel simply not appearing in searches through Wyndham's reservation system, which also feeds to third-party booking sites such as Expedia, Travelocity, and other business streams. Despite multiple notices to Wyndham by 1Nonly Phimar and complaints to Wyndham, issues with the reservation system persisted, and the hotel underperformed substantially as a result of its lack of visibility. In December 2023, the Debtors' secured lender posted the Hotel Property for foreclosure. The Debtors filed this case to preserve their assets for the benefit of all creditors in light of pressure and foreclosure proceedings initiated by the Debtors' senior secured creditor, Pegasus Bank.

2.3    Sale of Debtors' Assets.  A Purchase and Sale Agreement for the sale of substantially all of the Debtors' assets, dated March 12, 2024 (the "PSA"), and its terms were approved by order of the Bankruptcy Court entered on March 21, 2024 at Docket No. 106 (the "Sale Order").  The Sale Order and PSA, attached as Exhibit 1 to the Sale Order, and their terms are incorporated herein by this reference.  On March 26, 2024 (the "Closing Date"), the Debtors

consummated the sale of the Real Property, along with all Improvements thereon and certain Personal Property and Intangibles (as such terms are defined in the PSA), pursuant to the PSA and Sale Order. Alleged secured claims against the Real Property, including the claims of Pegasus Bank, the City of Dallas, Dallas County, and Richardson Independent School District, were paid from the proceeds of the sale of the Debtors' assets pursuant to the Sale Order (the "Sale Proceeds") on March 27, 2024, following the Closing Date.

## ARTICLE III
## LIQUIDATION ANALYSIS

3.1    Liquidation Analysis.  Under the Plan, Creditors of the Debtors will receive on account of their Claims property of a value, as of the Effective Date, that is not less than the Creditor would receive in a chapter 7 liquidation. The chart below graphically demonstrates the estimated and anticipated results of a liquidation of the Debtors if the case was converted to a case under Chapter 7 of the Bankruptcy Code. The Debtors notes that this estimation is by definition uncertain. The Debtors and its agents set forth what its best, educated, and good faith analysis of what the same would be.

| LIQUIDATION ANALYSIS | |
|---|---|
| Net Sale Proceeds | $1,990,237.19 |
| Other Cash and Cash Equivalents | $24,267.14 |
| Accounts Receivable | $3,237.65 |
| Total Assets for Distribution | $2,017,741.98 |
| Chapter 7 Cost of Administration (estimate) | $83,782.26 |
| Chapter 11 Costs of Administration (estimate) | $130,000.00 |
| Available for Secured Claims | $1,803,959.72 |
| Secured Claim Total | $158,278.06 |
| Available for Priority Claims | $1,645,681.66 |
| Priority Claims | $41,336.54 |
| Available for General Unsecured Claims | $1,604,345.12 |
| General Unsecured Claim Total* | $1,391,452.71 |
| Percent Distribution to Unsecured Creditors | 100.00% |

*Includes estimated rejection damages and claims disputed by the Debtors.

## ARTICLE IV
## FINANCIAL PROJECTIONS

4.1    Financial Projections.  The Debtors have analyzed their ability to make the payments specified in the Plan. Attached as **Exhibit C** hereto is a sources of the Net Sale Proceeds and the Debtor's other assets, along with a uses that outlines and estimates the amount of claims in each class.

## ARTICLE V
## DESIGNATION OF CLASSES OF CLAIMS

5.1    <u>Designation of Classes of Claims</u>.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

5.2    Unclassified Claims.

Allowed Administrative Claims (Unimpaired)

Priority Tax Claims (Unimpaired)

5.3    Classified Claims and Interests.

Class 1:    Secured Claims (Unimpaired)

Class 2:    Claims of General Unsecured Creditors (Impaired)

Class 3:    Claims of Insiders (Impaired)

Class 4:    Equity Interests (Unimpaired)

**ARTICLE VI**
**PAYMENT OF ADMINISTRATIVE CLAIMS**
**AND EXPENSES AND CERTAIN PRIORITY CLAIMS**

6.1    <u>Administrative Claim Applications and Deadline</u>.  Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' business which may be paid in the ordinary course of the Debtors' business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claim Bar Date: (i) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtors, the United States Trustee, and all other parties entitled to notice thereof. Failure to file and serve such application by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

6.2    <u>Treatment of Administrative Claims</u>.  Except to the extent that the Debtors and the Holder of an Allowed Administrative Claim may otherwise agree in writing, a Holder of an Administrative Claim which is an Allowed Claim prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid on or before the date which is ten (10) days following the date on which the Administrative Claim becomes an Allowed Claim.  For the

avoidance of doubt, the Sale Proceeds remaining following payment of the Allowed Secured Claims and other Assets of the Debtors shall be used first to pay all Allowed Priority Tax Claims, then to pay all Allowed Administrative Claims and Allowed Professional Claims, and then to pay Allowed General Unsecured Claims only after all Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Professional Claims are paid in full.

6.3    Treatment of Professional Claims.  Professional Claims become Allowed the same as Administrative Claims in this Article (Section 6.1) and are treated the same as Administrative Claims in this Article (Section 6.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 6.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 6.1, but shall file such application by the Professional Claim Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of the this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement in the event of administrative insolvency and shall cease being subject to said disgorgement ten (10) days after the Professional Claim Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) upon written agreement between the Debtors and the Holder of a Professional Claim, such amount may be paid pursuant to this Plan upon terms agreed upon between the Debtors and the Professional.

6.4    Priority Tax Claims.  In full and final satisfaction of Allowed Priority Tax Claims, each Allowed Priority Tax Claim shall, unless otherwise agreed, be paid in full in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code by the later of (a) the Effective Date, or (b) ten (10) days after becoming an Allowed Priority Tax Claim.

6.5    Payment of Statutory Fees.  All fees due and payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, (b) to the United States Trustee, or (c) to the Subchapter V Trustee shall be paid by the Debtors on or before the Effective Date.  From and after the Effective Date, any fees and charges which are assessed under Chapter 123, Title 28, United States Code, in relation to the Bankruptcy Case shall be paid by the Liquidating Debtors as they become due.

## ARTICLE VII
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

7.1    Secured Claims.  (Class 1) Class 1 consists of all Allowed Secured Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Secured Claim shall be paid by the

Liquidating Debtors, up to the Allowed amount of such Claim, by the later of (a) the Effective Date, or (b) ten (10) days after becoming an Allowed Secured Claim.

The Class 1 Secured Claims are Unimpaired, and they are not entitled to vote.

7.2     <u>General Unsecured Claims</u>. (Class 2) Class 2 consists of all Allowed General Unsecured Claims against the Debtors. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall be paid in full by the Liquidating Debtors, up to the Allowed amount of such Claim, by the later of (a) the Effective Date, or (b) ten (10) days after becoming an Allowed General Unsecured Claim.

The Class 2 Claims of the General Unsecured Creditors are Impaired, and are entitled to vote.

7.3     Insider Claims.  (Class 3) Class 3 consists of Holders of Claims against the Debtors held by Insiders, as such term is defined herein and in the Bankruptcy Code. Each Holder of an Allowed Class 3 Claim shall receive its Pro Rata share of any Debtor funds remaining following the payment in full to all Holders of Claims in Classes 1 and 2. For the avoidance of doubt, Chicken Island, LLC, the Levine Trust, and Levine shall not receive any distribution on account of their General Unsecured Claims against the Debtors unless and until all Holders of Claims in Classes 1 and 2 are paid in full.

The Class 3 Insider Claims are Impaired under the Plan, and the Holders of Allowed Claims in Class 3 are entitled to vote.

7.4     Equity Interests.  (Class 4) Class 4 consists of the Equity Interests in 1Nonly Phimar and Phimars Square, LLC. Holders of Equity Interests in 1Nonly Phimar shall retain their interests in 1Nonly Phimar and Phimars Square, LLC.

The Class 4 Claims of Equity Interests are Unimpaired, and they are not entitled to vote.

## ARTICLE VIII
## MEANS OF IMPLEMENTING THE PLAN

8.1     Continued Existence of the Liquidating Debtors.  Except as otherwise provided in this Plan, the Debtors shall continue to exist after the Effective Date as the Liquidating Debtors in accordance with the applicable laws of the state of Texas. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement, the Liquidating Debtors may, in its their sole discretion, take such action as permitted by applicable law and the Liquidating Debtors' organizational documents as the Liquidating Debtors may determine is reasonable and appropriate.

8.2     Sale of Assets.  The Sale Order and PSA, filed at Docket No. 106, and their terms are incorporated herein by this reference.  On March 26, 2024, the Debtors sold the Real Property, along with all Improvements thereon and certain Personal Property and Intangibles (as such terms are defined in the PSA), pursuant to the PSA and Sale Order. On March 27, 2024, alleged secured claims against the Real Property, including the claims of Pegasus Bank, the City of Dallas, Dallas

County, and Richardson Independent School District (the "Real Property Secured Claims"), were paid from the proceeds of the sale of the Debtors' assets pursuant to the Sale Order. Following payment of the Real Property Secured Claims, net sale proceeds in an amount of $1,990,237.19 (the "Net Sale Proceeds") were deposited into the Debtor's Debtor-In-Possession account with Veritex Community Bank (the "DIP Account").

8.3     Establishment of Reserve Accounts.  The Liquidating Debtors shall establish each of the Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Debtor).

        8.3.1     Senior Claim Reserve.  Prior to the Effective Date, the Liquidating Debtors shall establish the Senior Claim Reserve by depositing from the Net Sale Proceeds the amount estimated to be necessary to satisfy all Allowed Secured Claims, Allowed Administrative Claims (including Allowed Professional Claims) and Allowed Priority Claims. If any Cash remains in the Senior Claim Reserve after payment in full of all Allowed Administrative Claims (including Allowed Professional Claims) and Allowed Priority Claims, such excess Cash shall be transferred to the Unsecured Distribution Reserve.

        8.3.2     Unsecured Distribution Reserve.  Prior to the Effective Date, the Debtors shall establish the Unsecured Distribution Reserve by depositing the remainder of the Net Sale Proceeds, after funding the Senior Claim Reserve.

8.4     Payment Administrator.  Notwithstanding the provisions of 11 U.S.C. § 1194(b), the Liquidating Debtors shall be the payment administrator and shall be the party responsible for distributing all payments outlined and specified in the Plan.

8.5     Compromises and Settlements.  Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of certain Claims and Causes of Action arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises or settlements provided in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein. More specifically, and without limiting this provision, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 to settle any Claims and the treatment provided for them in this Plan.

8.6     Corporate Action.   The entry of the Confirmation Order shall constitute authorization for the Debtors to take or cause to be taken all corporate actions necessary or

appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. The management of the Liquidating Debtors are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith in the name of and on behalf of the Debtors and Liquidating Debtors.

8.7     <u>Documents</u>.  All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on or before the Effective Date unless an earlier date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Bankruptcy Court for determination.  Upon the Effective Date, or as soon as practicable thereafter, the Bankruptcy Court shall have resolved said issues, and all such documents shall be binding on the Debtors, the Creditors, and all other parties hereto.

8.8     <u>Post-Effective Date Management</u>.  The Liquidating Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, for the purposes of satisfying its obligations under the Plan. The Liquidating Debtors shall be managed by Philip Levine.

8.9     <u>Preservation of Causes of Action and Rights</u>.  All Causes of Action, rights of setoff and other legal and equitable defenses of the Debtors or their Estates are preserved unless expressly released, waived, or relinquished under the Plan or the Confirmation Order and shall vest in the Liquidating Debtors. No Person may rely on the absence of a specific reference in the Plan to any Cause of Action against them as an indication that a Cause of Action will not be pursued against them.

**Further, unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or**

**in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

Unless expressly released by the Plan or by an order of the Bankruptcy Court, the Debtors may hold claims against a Holder of a Claim or Equity Interest, including but not limited to, the following claims and Causes of Action, all of which shall be preserved:

- Preference claims under section 547 of the Bankruptcy Code;

- Fraudulent transfer and other avoidance claims arising under section 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;

- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;

- Claims and Causes of Action against TMH Worldwide, LLC and its affiliates, successors, or assigns;

- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition; and

- Counterclaims asserted in current litigation.

8.10   <u>Conditions to Effective Date</u>.   The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied in accordance with the terms hereof:

(a)    The Confirmation Order shall have become a Final Order; and

(b)    All actions, documents, and agreements necessary to implement the Plan shall have been effectuated or executed.

8.11   <u>Waiver of Conditions Precedent</u>.  Except as otherwise provided herein, any action required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. The Debtors reserves the right to waive the occurrence of the conditions precedent set forth in <u>Section 8.10</u> hereof or to modify any of such conditions precedent. Any such written waiver or such conditions precedent may be effectuated at any time, without notice or leave or order of the Bankruptcy Court and without any other formal action other than proceeding to consummate the Plan.

**ARTICLE IX**
**<u>PROVISIONS FOR THE ASSUMPTION AND REJECTION OF EXECUTORY</u>**
**<u>CONTRACTS AND UNEXPIRED LEASES</u>**

9.1   <u>General Rejection of Executory Contracts and Leases</u>.  All executory contracts and unexpired leases of the Debtors (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly assumed or rejected on or before the Effective Date, or not otherwise specifically treated in this Plan or in the Confirmation Order, shall be deemed to have

been rejected as of the date of the Closing Date. The listing by the Debtors in their Schedules of a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease of the Debtor, or that the Debtors or their Estate have any liability thereunder.

9.2   <u>Claims for Damages</u>.  Unless otherwise specified in a separate Final Order of the Bankruptcy Court, any Claim based upon rejection of an executory contract or unexpired lease under the Plan must be Filed with the Bankruptcy Court and served on the Liquidating Debtors such that the Claim is actually received within thirty (30) days of the Effective Date. Notwithstanding the foregoing, and for the sake of clarity, nothing in this section is meant to modify any prior Order of the Bankruptcy Court related to a rejection of an executory contract or unexpired lease, and to the extent a date is specified in such order, such date shall be the deadline by which Claims based upon rejection must be Filed.  All Allowed Claims for rejection damages, unless otherwise specifically provided for or addressed in this Plan, shall be treated as Class 2 General Unsecured Claims.  Any Claim not Filed within such time will be forever barred from assertion against the Debtors, Liquidating Debtors, and their Estates.

## ARTICLE X
## RESOLUTION OF UNDETERMINED CLAIMS

10.1   <u>Standing</u>.  In addition to all other parties that may otherwise have standing to object to claims, the Liquidating Debtors shall have specific standing to object to the allowance of said Claims.

10.2   <u>Effect of Bar Date</u>.  In accordance with Bankruptcy Rule 3003(c), any entity, Person, or Creditor who: (i) was not listed in the Schedules, (ii) holds a Contingent Claim, (iii) holds an Unliquidated Claim, or (iv) holds a Disputed Claim, and did not file a proof of Claim before the Bar Date shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

10.3   <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>.    Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be Filed after the Confirmation Date without prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any Claim Filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Liquidating Debtors.

10.4   <u>Objection Deadline</u>.  Within thirty (30) days from the Effective Date, unless such date is extended by order of the Bankruptcy Court after notice and hearing, the Liquidating Debtors may file with the Bankruptcy Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains. Unless arising from an Avoidance Action, any proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Liquidating Debtors may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Bankruptcy Case or grants any Creditor any

greater rights with respect to a late-filed Claim than such Creditor otherwise has.  Unless otherwise ordered by the Bankruptcy Court, the Liquidating Debtors shall litigate to judgment, settle, or withdraw objections to contested Claims.

10.5    <u>Creditor Response to Objection</u>.  With respect to any objection to a Claim when such objection is Filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Liquidating Debtors and the objecting party no later than thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

10.6    <u>No Payment Pending Allowance</u>.  Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

10.7    <u>Allowance of Claims</u>.  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Liquidating Debtors make any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will be due and payable on the date which is thirty (30) days following the date of the order allowing such Claim, less the amounts paid by the Debtors prior to such a determination.

10.8    <u>Estimation of Claims</u>.  The Debtors or the Liquidating Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtors or the Liquidating Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated subsequently and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE XI
## DISTRIBUTION PROCEDURES

11.1    Record Date for Claims.  The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court enters its order approving the Plan. For purposes of Distribution to Holders of Allowed Claims, the Liquidating Debtors will rely on the Claims Register maintained by the Bankruptcy Court except to the extent a notice of transfer of Claim has been Filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001.

11.2    Form of Distributions.  Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer at the option of the Liquidating Debtors.

11.3    Conditions to Distributions; Warranty of Entitlement.  Each and every Creditor who receives and accepts a Distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Liquidating Debtors that such Creditor is the lawful Holder of the Allowed Claim, is authorized to receive the Distribution, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the Distribution.

11.4    Withholding Taxes.  In connection with this Plan, to the extent applicable, the Liquidating Debtors shall comply with all tax withholding and reporting requirements validly imposed on them by any governmental authority, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, payment of applicable withholding taxes from a Distribution, and conditioning a Distribution upon receipt of necessary tax reporting information from the Holder of the Claim.

11.5    Setoffs.  Except as otherwise expressly provided in the Plan and pursuant to Sections 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Liquidating Debtors may, upon application and approval by the Bankruptcy Court, setoff against any Distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights, or Causes of Action held by the Liquidating Debtors against the Holder of the Allowed Claim or in relation to the Allowed Claim, *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Liquidating Debtors of any such claims, rights, or Causes of Action. If the Liquidating Debtors fails to setoff against a Claim and seeks to collect from the Holder of such Claim after Distribution to that Holder pursuant to the Plan, the Liquidating Debtors shall be entitled to full recovery on the claims of the Debtors or their Estates, if any, against the Holder of such Claim.

11.6    Rounding.  Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

11.7    *De Minimis* Distributions.  Notwithstanding any provision of the Plan to the contrary, no Distribution of less than five dollars ($5.00) shall be made on an Allowed Claim from the Liquidating Debtors, unless such Distribution shall be a final Distribution.

11.8    Undeliverable and Unclaimed Distributions.  Any Person that is entitled to receive a Distribution of Cash under the Plan but fails to cash a check within ninety (90) days of its issuance

**DEBTORS' PLAN OF LIQUIDATION**                                        **Page 12**

shall be entitled to receive a reissued check from the Liquidating Debtors for the amount of the original check, without any interest, if such Person requests the Liquidating Debtors to reissue such check and provides such documentation as may be requested to verify that such Person is entitled to such check within one year of the check's issuance date.  After the expiration of the applicable deadline to request a check to be reissued, the Person who fails to cash a check within ninety (90) days of its issuance shall not be entitled to receive any Distribution under the Plan on account of the Claim that was attempted to be paid. If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating Debtors as undeliverable, no further Distributions will be made to such Holder unless and until the Liquidating Debtors are notified in writing of such Holder's current address, *provided*, *however*, a claim for an undeliverable Distribution must be made within one hundred eighty (180) days following the date of issuance of the original Distribution. After such date, all unclaimed property shall revert to the Liquidating Debtors for further disbursement in accordance with the Plan, and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged, disallowed, and forever barred notwithstanding any federal or state escheatment laws to the contrary. The Liquidating Debtors have no obligation to independently undertake any investigation to determine the whereabouts of any Holder of an Allowed Claim.

11.9    Disputed Distributions.  No Distribution will be made on account of a Disputed Claim unless and until it becomes Allowed.  Upon a request for estimation, the Bankruptcy Court will determine what amount of Cash from the initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan, pursuant to Section 502 of the Bankruptcy Code or applicable law, in which case, the amount so determined by the Bankruptcy Court shall be deemed the Allowed amount of such Disputed Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum amount to which such Claim may be ultimately Allowed.  Upon motion by a party in interest, the Bankruptcy Court may determine the appropriate amount of any reserves required in connection with a Disputed Claim.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, or a Distribution thereon, the Liquidating Debtors may either (a) establish a reserve account for deposits of Disputed Claims until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (b) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the Disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Liquidating Debtors may have in relation to such interpleader action, *provided, however,* that once segregated or interplead, interest shall cease to accrue on an Allowed Claim.

## ARTICLE XII
## EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION, AND EXCULPATIONS

12.1    Notice of the Effective Date.  On or before ten (10) Business Days after occurrence of the Effective Date, the Liquidating Debtors shall mail or cause to be mailed to all Holders of Claims and Equity Interests a notice that informs such Holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) the Administrative Claim Bar Date; (d) Professional Claim Bar Date; and (e) such other matters that the Liquidating Debtors deems appropriate.

12.2    <u>Binding Effect of Plan</u>.  Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtors, the Liquidating Debtors, all Creditors, all Equity Interest Holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan.

12.3    <u>Discharge of Debtors.</u>  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtors shall be deemed discharged and released upon the completion of all payments specified in the Plan to the extent permitted by Sections 1192 and 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is Filed or deemed Filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors.  Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against either the Debtors or the property of the Debtors, to the extent it relates to a Claim discharged.

12.4    <u>Injunction Against Interference with Plan</u>.  Upon the Effective Date, all Holders of Claims, all Holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees, and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

12.5    <u>Exculpations</u>.  Neither the Debtors' professionals, nor any of its respective present officers, employees, agents, representatives, advisors, affiliates, underwriters, or investment bankers, nor any other professional persons employed by any of them (collectively, the "Exculpated Parties"), shall have or incur any liability to any Person for any act taken or omission in connection with or related to formulating, negotiating, implementing, confirming, or consummating the Plan, except for willful misconduct. The Exculpated Parties shall have no liability, except for willful misconduct, to the Debtors, any Creditor, any Equity Interest Holder, and any other party in interest in the Bankruptcy Case, or any other Person for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XIII
## MODIFICATION OF THE PLAN

13.1    <u>Amendments Prior to Confirmation Date</u>.  The Debtors may modify or amend the Plan prior to Confirmation, and the Plan, as modified or amended, shall become the new Plan of Liquidation.

13.2    <u>Amendments After Confirmation Date</u>.  The Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Bankruptcy Court, after notice and hearing, confirms the Plan, as modified. Further, in the event that the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), then the Liquidating Debtors may (subject to the restrictions specified in 11 U.S.C. § 1193(c)) modify the plan after substantial consummation.

13.3    <u>Effect on Claims</u>.  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XIV
## RETENTION OF JURISDICTION

14.1    <u>Purposes</u>.  Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case for the following purposes:

i.    to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which either of the Debtors are a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv.    to hear and determine any and all actions initiated by the Liquidating Debtors, whether by motion, complaint, or otherwise;

v.    to determine any and all applications, motions, adversary proceedings, and contested matters pending before the Bankruptcy Court on the Confirmation Date or Filed or instituted after the Confirmation Date;

vi. to modify this Plan or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, this Plan or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii. to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii. to allow, disallow, determine, liquidate, or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

ix. to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement, and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x. to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, or vacated;

xii. to determine such other matters as may arise in connection with this Plan or the Confirmation Order;

xiii. to enforce all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case;

xiv. to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv. to determine all issues relating to the Claims of Wyndham and Claims of the Debtors against Wyndham;

xvi. to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvii. to enter a Final Order and final decree closing the Bankruptcy Case.

14.2 <u>Exclusive Jurisdiction</u>. The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation, or administration of this Plan, or the Confirmation Order, and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

14.3    Abstention.  If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Case, including the matters set forth in this Article XIV, this Article XIV shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XV
## GENERAL PROVISIONS

15.1    Certain Rights Unaffected.  Except as otherwise provided herein, any rights or obligations which the Debtors' Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

15.2    Incorporation of Valuation Motion.  To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including the value of any lien, security interest, or encumbrance treated by this Plan, *provided, however,* that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Bankruptcy Case.

15.3    Automatic Stay.  The automatic stay provided in Section 362 of the Bankruptcy Code shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order and shall terminate on the Effective Date.

15.4    Reservation of Rights.  The Plan shall have no force or effect unless and until the Effective Date occurs.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

15.5    Rights Under 1191(b).  If all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10), and (15) of that section, are met, the Debtors will seek confirmation under the cram down provisions of Section 1191(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1191(b) in that event.

15.6    Headings.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions, or interpretations of this Plan.

15.7    Severability.  If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

15.8    Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements, and instruments executed in connection with this Plan (except to the extent such documents, agreements, and

instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

15.9    <u>Successors and Assigns</u>.  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

Dated: April 1, 2024                    **1NONLY PHIMAR, LLC**

                                        */s/ Philip Levine*
                                        By: Philip Levine,
                                        Its Manager


Dated: April 1, 2024                    **PHIMARS SQUARE, LLC**

                                        */s/ Philip Levine*
                                        By: Philip Levine,
                                        Its Manager


OF COUNSEL

*/s/ Megan F. Clontz*
Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com


**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

Liquidating Debtors' Address for Notice:

1Nonly PhiMar LLC
PhiMars Square LLC
Attn: Philip Levine
8330 Lyndon B. Johnson Fwy, Suite B1180
Dallas, TX 75243
Email: plevine@tyvanhill.com

Counsel for Liquidating Debtors Address for Notice:

Jason P. Kathman
Megan F. Clontz
Spencer Fane LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com