

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 21, 2024**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-30017-sgj** |
| **1NONLY PHIMAR LLC,** *et al.*[1] | § | |
| | § | **Chapter 11** |
| Debtors. | § | **(Jointly Administered)** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1191 CONFIRMING DEBTORS' PLAN OF LIQUIDATION

WHEREAS, on April 1, 2024, 1Nonly PhiMar LLC ("1NOnly Phimar") and PhiMars Square, LLC ("Phimars Square," and collectively with 1NOnly Phimar, the "Debtors"), filed their Plan of Liquidation [Docket No. 113] (the "Original Plan," and collectively with all amendments and modifications thereto, the "Plan")[2]; and

---

[1] The Debtors in these chapter 11 cases are 1Nonly PhiMar, LLC (the last four digits of its federal tax identification number are 4226) and PhiMars Square, LLC (the last four digits of its federal tax identification number are 3404).

[2] Unless otherwise defined in this Order, capitalized terms used herein have the meanings ascribed to them in the Plan.

---

WHEREAS, on April 3, 2024, in accordance with the Court's Order Setting Plan Related Deadlines and Hearing on Confirmation (Subchapter V) [Docket No. 114] (the "Confirmation Scheduling Order"), the Debtors caused the Original Plan, the Confirmation Scheduling Order, and a ballot for voting to accept or reject the Plan (collectively, the "Solicitation Package") to be transmitted to holders of Claims in all Classes listed in the Plan and all parties-in-interest in this case;

WHEREAS, pursuant to 11 U.S.C. § 1128(a), the Court held a hearing on May 13, 2024, to consider confirmation of the Plan (the "Confirmation Hearing"); and

NOW, THEREFORE, based upon the Court's review and consideration of (i) the submissions previously filed with the Court; (ii) the record of the Confirmation Hearing (including all of the evidence proffered or adduced at the hearings, pleadings, and other submissions filed in connection therewith, and the arguments of counsel made at the hearing); and (iii) the record in the above-captioned case (the "Bankruptcy Case"); and after due deliberation thereon, and good cause appearing therefore,

**THE COURT FINDS AND CONCLUDES THAT:[3]**

A.    <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Fed. R. Bankr. P. 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

B.      _Jurisdiction, Venue, Core Proceeding - 28 U.S.C. §§ 157(b)(2) and 1334(a)_. The Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code[4] and should be confirmed. The Debtors are eligible Debtors under sections 109 and 1182(1) of the Bankruptcy Code. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Debtors are proper Plan proponents under section 1189(a) of the Bankruptcy Code.

C.      _Bankruptcy Case_. On January 1, 2024 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code, which are jointly administered under the above-captioned case (the "Bankruptcy Case").

D.      _Judicial Notice_. The Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or addressed at the hearings held before the Court during the pendency of the Bankruptcy Case.

E.      _Burden of Proof_. The Debtors, as the Plan proponents, have the burden of proving the elements of 11 U.S.C. § 1191, including elements of 11 U.S.C. § 1129(a), by a preponderance of the evidence. The Debtors have met such burden.

F.      _Transmittal and Mailing of Materials: Notice_. Due, timely, proper, and adequate notice of the Plan and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan and to object to the Plan, has been provided substantially in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the procedures set forth in the Confirmation Scheduling Order.

---

[4] 11 U.S.C. §§ 101 _et seq._

G.     Identification of Plan Proponents—Fed. R. Bankr. P. 3016(a). The Plan satisfies Bankruptcy Rule 3016(a) by identifying the date of the Plan and the proponents of the Plan.

H.     Solicitation and Transmittal of Solicitation Package. The solicitation of votes to accept or reject the Plan and requests for consent to the treatment were solicited in good faith and in compliance with 11 U.S.C. §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations. The Solicitation Package was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the solicitation materials used, and solicitation procedures followed, comply with 11 U.S.C. § 1126, thereby satisfying the requirements of Fed. R. Bankr. P. 3018. All procedures used to distribute the Solicitation Packages to the applicable holders of Claims were fair and conducted in accordance with the Confirmation Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and any other applicable rules, laws, and regulations.

I.     Good Faith Solicitation—11 U.S.C. § 1125(e). Based on the record before the Court in the Bankruptcy Case, the Debtors and their attorneys, and other representatives have acted in good faith within the meaning of 11 U.S.C. § 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to and consents to the treatment afforded under the Plan and their participation in the activities described in 11 U.S.C. § 1125.

J.     Notice of the Confirmation Hearing—Fed. R. Bankr. P. 2002 and 3017. The Debtors gave notice of the Confirmation Hearing, the deadline to accept or reject the Plan, and the deadline to object to the Plan in accordance with the Confirmation Scheduling Order. The Solicitation

Package was transmitted to the creditors entitled to vote on the Plan in accordance with Fed. R. Bankr. P. 2002 and 3017.

K. <u>Impaired Classes That Have Voted to Accept the Plan</u>. As evidenced by the record established at the Confirmation Hearing, at least one or more Impaired Classes have voted to accept the Plan, as defined by 11 U.S.C. §§ 1124 and 1126.

L. <u>Modifications</u>. Any modifications to the Plan, as incorporated into the Plan as set forth on the record at the Confirmation Hearing and in this Order, do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications. Under Fed. R. Bankr. P. 3019, these modifications neither require additional disclosure under 11 U.S.C. § 1125 or re-solicitation of acceptance or rejections under 11 U.S.C. § 1126, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptance or rejections of the Plan. Disclosure of the modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of this Bankruptcy Case. Accordingly, pursuant to 11 U.S.C. § 1127 and Bankruptcy Rule 3019, all holders of Claims that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

M. <u>Plan Compliance with 11 U.S.C. § 1190</u>. The Plan complies with the applicable provisions of 11 U.S.C. § 1190.

a. The Plan discloses a brief history of the business operations of the Debtors in Article II, a liquidation analysis in Article III, and projections with respect to the ability of the Debtors to make payments under the proposed Plan in Article IV and Exhibit C, satisfying 11 U.S.C. § 1190(1).

b. The Plan satisfies 11 U.S.C. § 1190(2), as it provides for the Debtors' income following the sale of substantially all of its assets to be used to execute the Plan. Submission of such income to a trustee is not necessary, as the Debtors confirms its Plan as a consensual Plan pursuant to 11 U.S.C. § 1191(a).

N.      <u>Plan Compliance with 11 U.S.C. § 1191(a)</u>. The Plan complies with the applicable provisions of 11 U.S.C. § 1129(a), other than paragraph (15) of that section, as set forth herein, and is eligible to be confirmed as a consensual Plan pursuant to 11 U.S.C. § 1191(a).

O.      <u>Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1)</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying 11 U.S.C. § 1129(a)(1).

a.      <u>Proper Classification 11 U.S.C. §§ 1122 and 1123(a)(1)</u>. In addition to Administrative Claims, which need not be classified, Article V of the Plan designates two (2) Classes of Impaired Claims, one (1) Class of Unimpaired Secured Claims, and one (1) Class of Unimpaired Equity Interests. The Claims placed in each Class are substantially similar to other Claims in each such Class, and such classification is therefore consistent with 11 U.S.C. § 1122. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes and the Plan's treatment thereof do not unfairly discriminate between Holders of Claims. The Plan satisfies 11 U.S.C. §§ 1122 and 1123(a)(1).

b.      <u>Specified Treatment of Impaired and Unimpaired Classes—11 U.S.C. §§ 1123(a)(2) and (3)</u>. Article V of the Plan specifies whether each Class of Claims is Impaired or Unimpaired, satisfying 11 U.S.C. § 1123(a)(2), and Article VII of the Plan specifies the treatment of the Impaired Classes of Claims, thereby satisfying 11 U.S.C. § 1123(a)(3).

c.      <u>No Discrimination—11 U.S.C. § 1123(a)(4)</u>. Article VII of the Plan either provides the same treatment for each Claim within each respective Class or the Holder of a particular Claim or Interest has agreed to a less favorable treatment of his/her/its particular Claim or interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

d.      <u>Implementation of the Plan—11 U.S.C. § 1123(a)(5)</u>. Article VIII of the Plan provides adequate and proper means for implementing the Plan.

e.      <u>Selection of Officers and Directors—11 U.S.C. § 1123(a)(7)</u>. The Debtors properly and adequately discloses in in Article VIII the person which will be managing the Debtors post-confirmation. Such manager shall receive no compensation during the pendency of the Plan repayment period. Consequently, 11 U.S.C. § 1123(a)(7) is met.

f.      Permissible Plan Provisions—11 U.S.C. § 1123(b). The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

g.      Impairment of Classes—11 U.S.C. § 1123(b)(1). In accordance with Bankruptcy Code Section 1123(b)(1), Article VII of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims under the Plan.

h.      Treatment of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(2). The Plan constitutes a motion by the Debtors to reject all executory contracts and unexpired leases not expressly assumed or rejected on or before the Effective Date as allowed by 11 U.S.C. § 1123(b)(2), as set forth in Article IX of the Plan.

i.      Settlement of Claims—11 U.S.C. § 1123(b)(3). Articles VII and VIII of the Plan provide for various treatment of Classes of Claims, including the settlement of, or adjustments to, certain Claims or Interests belonging to the Debtors or to the Estate as allowed by 11 U.S.C. § 1123(b)(3).

j.      Exculpations. The exculpations described in Article XII of the Plan (the "Exculpations") are appropriate under applicable law because they are proposed in good faith and are appropriately limited in scope. Without limiting anything in the Exculpations, each Exculpated Party is appropriately released and exculpated from Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of, formulating, negotiating, implementing, confirming, or consummating the Plan, except for willful misconduct. The Exculpations are consistent with established practice in this jurisdiction and others.

k.      Additional Plan Provisions—11 U.S.C. § 1123(b)(6). Further, the Plan provides a number of provisions related to the settlement, timing, and payment of claims, as well as continuing jurisdiction and certain injunctions and exculpations. The Debtors Exculpation and Injunction provisions provided in the Plan (i) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan, and inextricably bound with the other provisions of the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtor, its Estate, and its creditors; (iv) are fair, equitable, and reasonable; (v) are given and made after due notice and opportunity for hearing; (vi) satisfy the requirements of Bankruptcy Rule 9019; and (vii) are consistent with the Bankruptcy Code and other applicable law, and as set forth herein. All other Plan provisions are acceptable and are not inconsistent with the

applicable provisions of the Bankruptcy Code and other applicable law. Thus, the Plan complies with 11 U.S.C. § 1123(b)(6).

P.    <u>The Debtors' Compliance with the Bankruptcy Code—11 U.S.C. § 1129(a)(2)</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(2). Based upon the record made at the Confirmation Hearing and pleadings filed in the Bankruptcy Case, the Debtors have complied with applicable provisions of the Bankruptcy Code and orders of the Court, and the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Scheduling Order in transmitting the Solicitation Package and related documents and notices and in soliciting and tabulating votes on the Plan.

Q.    <u>Plan Proposed in Good Faith—11 U.S.C. § 1129(a)(3)</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3). This Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based upon the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of effectively liquidating the Debtors' remaining assets and maximizing the recovery to creditors in accordance with the priorities set forth in the Bankruptcy Code.

R.    <u>Payment for Services or Costs and Expenses—11 U.S.C. § 1129(a)(4)</u>. Any payments made or to be made by the Debtors for services or for costs and expenses in connection with the Bankruptcy Case have been approved by, or are subject to the approval of, the Court as reasonable, as set forth in article VI of the Plan, thereby satisfying 11 U.S.C. § 1129(a)(4).

S.    <u>Identification of Directors, Officers, and Insiders —11 U.S.C. § 1129(a)(5)</u>. The Debtors have complied with 11 U.S.C. § 1129(a)(5) by disclosing in Article VIII of the Plan or at the Confirmation Hearing (1) the identity and affiliations of any individual proposed to serve, after

confirmation of the Plan, as a director or officer of the Liquidating Debtors, and (2) the compensation to be paid to such individuals.

T.    No Rate Changes—11 U.S.C. § 1129(a)(6). No governmental regulatory commission has jurisdiction over rates of the Debtors after confirmation of the Plan. Thus, 11 U.S.C. § 1129(a)(6) is not applicable in the Bankruptcy Case.

U.    Best Interests of Creditors Test—11 U.S.C. § 1129(a)(7). The Plan satisfies 11 U.S.C. § 1129(a)(7). The Plan and evidence adduced at the Confirmation Hearing (i) are persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) have not been controverted by other persuasive evidence or have not been challenged; (iii) are based upon reasonable and sound assumptions; (iv) provide a reasonable estimate of the liquidation value of the Debtors' assets upon conversion to a chapter 7 proceeding; and (v) establish that each holder of a Claim in an Impaired Class will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the applicable Debtors was liquidated under chapter 7 of the Bankruptcy Code on such date.

V.    Acceptance by All Impaired Classes—11 U.S.C. § 1129(a)(8). With respect to each Class of Claims or Interests, each class has either accepted the Plan or is not Impaired under the plan, thereby satisfying 11 U.S.C. § 1129(a)(8).

W.    Treatment of Administrative, Other Priority Claims and Priority Tax Claims—11 U.S.C. § 1129(a)(9). The treatment of Administrative Claims and Priority Tax Claims set forth in Article VI of the Plan satisfies the requirements of 11 U.S.C. §§ 1129(a)(9). Administrative Claims and Priority Tax Claims will be paid in full on the Effective Date of the plan, unless otherwise agreed upon by the Debtors and the holder of the Administrative Claim or Priority Tax Claim.

X.      <u>Acceptance by Impaired Classes—11 U.S.C. § 1129(a)(10)</u>. At least one Class of Claims that is Impaired under the Plan has accepted the Plan, without including any acceptance of the Plan by any Insider, as required by 11 U.S.C. § 1129(a)(10). Specifically, Class 2 set forth in Articles V and VII of the Plan excludes insiders, is Impaired, and has accepted the Plan.

Y.      <u>Feasibility—11 U.S.C. § 1129(a)(11)</u>. The Plan satisfies the feasibility requirement of 11 U.S.C. § 1129(a)(11). Specifically, the Plan is not likely to be followed by further liquidation or reorganization.

Z.      <u>Payment of Fees—11 U.S.C. § 1129(a)(12)</u>. All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12). The Debtors have paid all required interim compensation to the Subchapter V Trustee in this case, pursuant to paragraph 8 of the Court's Scheduling Order and Notice of Status Conference at Docket No. 33.

AA.     <u>Continuation of Retiree Benefits—11 U.S.C. § 1129(a)(13)</u>. The Debtors do not have any retiree benefits to be continued under the Plan. Thus, 11 U.S.C. § 1129(a)(13) is not applicable to the Debtor.

BB.     <u>Inapplicability of 11 U.S.C. §§ 1129(a)(14) & (15)</u>.  The Debtors do not have any domestic support obligations and is not an individual, thus 11 U.S.C. §§ 1129(a)(14) and (15) are not applicable.

CC.     <u>No Objections Filed</u>. No objections to the Debtors' Plan were timely filed.

DD.     <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements for confirmation set forth in 11 U.S.C. § 1191(a).

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

1.      <u>Confirmation of the Plan</u>. The Plan, which includes any and all modifications, including any modifications set forth on the record at the Confirmation Hearing, is **APPROVED** and **CONFIRMED** as a consensual Plan under 11 U.S.C. § 1191(a) in its entirety. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. For reference, the Plan, with the modifications incorporated, is attached as **Exhibit 1** to this Order.

2.      <u>Objections</u>. No objections to the Plan were timely filed in this Bankruptcy Case.

3.      <u>Settlements Approved</u>. The compromises and settlements specified in Articles VIII and XII of the Plan are expressly approved and conclusively determined to be in the best interests of Creditors and the Estates.

4.      <u>Effects of Confirmation; Effectiveness; Successors and Assigns</u>. The Court directs that Fed. R. Civ. P. 62(a) and the stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order, and the Court authorizes the Debtors to consummate the Plan after entry of this Confirmation Order. Subject to the occurrence of the Effective Date, and notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan (including the Plan Exhibits and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on (a) the Debtor, (b) any entity issuing securities under the Plan, (c) any Creditor, (d) any Equity Interest Holder, and (e) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, whether or not the Claim or Interest of such Creditor or Equity Interest Holder is Impaired under the Plan and whether or not such Creditor or Equity Interest Holder accepted the Plan. Upon the occurrence of the Effective Date with respect to the Debtor, the Plan shall be deemed substantially consummated.

5.    <u>Injunctions and Exculpations</u>. The injunction and exculpation provisions set forth in Article XII of the Plan are incorporated into this Confirmation Order as if set forth in full herein, are hereby approved in their entirety, and are subject to any other terms of the Plan.

6.    <u>Injunction Against Interference with the Plan</u>. Pursuant to Article XII of the Plan, upon the entry of the Confirmation Order, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to 11 U.S.C. § 105 from taking any action to interfere with the implementation or consummation of the Plan.

7.    <u>Plan Implementation Authorization</u>. Pursuant to the Plan, all necessary documents for the implementation of the Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided by the Plan.

8.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(2)</u>. Pursuant to Article IX of the Plan, all executory contracts and unexpired leases to which the Debtors are a party shall be rejected as of the Petition Date, unless the Debtors expressly assumed or rejected such contract or lease on or before the Effective Date. For the sake of clarity, nothing in this Order is meant to alter any former Order of this Court with regarding to a prior assumption or rejection.

9.    <u>Damage Claims</u>. Pursuant to Article IX of the Plan, any Claims based upon rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtor, unless a proof of claim is filed with the Bankruptcy Court and served on the Debtors such that it actually receives the proof of claim within thirty (30) calendar days of entry of this Confirmation Order.

10.    <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State or any

other governmental authority with respect to implementation or consummation of the Plan and any

documents, instruments, or agreements, and any amendments or modifications thereto, and any

other acts referred to in or contemplated by the Plan and any documents, instruments, agreements,

amendments, or modifications related thereto.

11.     <u>Exemption from Certain Taxes</u>. Pursuant to 11 U.S.C. § 1146(c), any transfers

contemplated by the Plan shall not be subject to any stamp, transfer tax, or similar tax.

12.     <u>Resolution of Claims</u>. Except as otherwise ordered by the Court, any Claim that is

not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms

of the Plan. All objections to Claims shall be filed with the Court within thirty (30) days from the

Effective Date, and a copy of the objection shall be served upon the Holder of the Claim to which

such objection pertains. Any request for an extension period to object to Claims need be served

only upon the creditors involved and the United States Trustee.

13.     <u>Claims of Pathward N.A.</u> Pathward N.A. ("Pathward") shall have an Allowed

Claim in the amount of $26,416.50 (the "Allowed Pathward Claim"), and the Allowed Pathward

Claim shall be paid by the Liquidating Debtors by the Effective Date. Notwithstanding anything

to the contrary in the Plan or this Confirmation Order, the liens granted to Pathward pursuant to

that certain Premium Finance Agreement dated August 25, 2023 (the "Pathward Agreement") shall

survive confirmation of the Plan to secure the treatment of the Allowed Pathward Claim specified

herein. The Debtor has cancelled the policies of insurance financed under the Pathward

Agreement, and Pathward is granted relief from the automatic stay and any other applicable

injunction imposed upon confirmation of the Plan to (i) receive, recover and collect the unearned

insurance premiums related to the financed insurance coverage from the insurance carriers, agents,

and brokers up to the amount of the Allowed Pathward Claim; and (ii) apply such unearned

premiums to the Allowed Pathward Claim. In the event the unearned insurance premiums are paid directly to Pathward, Pathward shall immediately pay any excess return premium, after payment of the Allowed Pathward Claim, to the Liquidating Debtors.

14.    <u>Claims of the Texas Comptroller of Public Accounts</u>. A failure by the Liquidating Debtors to make a payment to the Texas Comptroller of Public Accounts, Revenue Accounting Division (the "Comptroller") pursuant to the terms of the Plan shall be an Event of Default. If the Liquidating Debtors fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Liquidating Debtors at 8330 Lyndon B. Johnson Freeway, Suite B1180, Dallas, TX  75243, and upon Debtor's attorney at Spencer Fane LLP, 5700 Granite Parkway, Suite 650, Plano, TX  75024, Attn:  Megan F. Clontz and at mclontz@spencerfane.com.

15.    <u>Claims of Richardson Independent School District</u>. Any pre-petition and post-petition liens of Richardson Independent School District existing as of the date of this Order shall remain attached to the proceeds from the Debtors' March 26, 2024, sale of taxable property located at 8101 Lyndon B. Johnson Freeway, Dallas, TX  75251 until such tax claims are paid in full. Such tax claims shall be paid in full on the Effective Date, with applicable interest from the petition date at a rate of 12% per annum.

16.    <u>Payment of Fees</u>. All fees payable by the Debtors under 28 U.S.C. § 1930, if any, shall be paid on the later of the Effective Date or the due date.

17.    <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

18.    <u>Retention of Jurisdiction</u>. Except as otherwise specified in the Plan, pursuant to 11 U.S.C. §§ 105(a) and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in Article XIV of the Plan.

19.    <u>Notice of Entry of Confirmation Order</u>. The Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(j), 2002(k), and 3020(c) on all Creditors, the United States Trustee, the Securities and Exchange Commission, the Internal Revenue Service, and other parties in interest, by causing notice of entry of this Confirmation Order to be delivered to such parties by first-class mail, postage prepaid.

20.    <u>Notice of Effective Date</u>. Within five (5) Business Days following the occurrence of the Effective Date, the Debtors shall file notice of the occurrence of the Effective Date with the Bankruptcy Court and shall serve a copy of same on (a) the United States Trustee; and (b) the entities that have requested notice in the Bankruptcy Case pursuant to Bankruptcy Rule 2002.

21.    <u>Reference to Plan Provisions</u>. The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

22.    <u>Inconsistency</u>. In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or documents. In the event of any inconsistency between the Plan and any agreement, instrument, or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern.

23.    <u>Enforceability</u>. Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan and all plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

24.    <u>Final Order</u>. This Confirmation Order constitutes a Final Order, and no just cause exists for delay of this Confirmation Order.

25.    <u>Administrative and Professional Fee Claims</u>. The deadline for filing all applications for payment of Administrative Claims, including Professional Claims, shall be on or before thirty (30) days after the Effective Date. Except as expressly provided elsewhere in the Plan, any Administrative Claim filed after that date shall be deemed untimely filed and shall be disallowed. The deadline for objecting to such Administrative Claims is twenty-four (24) days after a request for payment of such Claim has been filed. The deadline for submitting applications for compensation for services rendered in the Bankruptcy Case pursuant to 11 U.S.C. §§ 327, 328, 330, 331, or 1103 (the "Professional Fee Claims") prior to the Effective Date is thirty (30) days

after the Effective Date. The deadline to object to final fee applications shall be the twenty-first

(21st) day after such fee application has been filed.

### # # # END OF ORDER # # #

**Submitted by:**

*/s/ Megan F. Clontz*
Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com

**COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-30017-sgj** |
| **1NONLY PHIMAR LLC,** *et al.*[1] | § | |
| | § | **Chapter 11** |
| **Debtors.** | § | **(Jointly Administered)** |

## DEBTORS' PLAN OF LIQUIDATION

Dated: April 1, 2024

*/s/ Megan F. Clontz*

Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com

**COUNSEL FOR THE DEBTOR AND**
**DEBTOR-IN-POSSESSION**

---

1 The Debtors in these chapter 11 cases are 1Nonly PhiMar, LLC (the last four digits of its federal tax identification number are 4226) and PhiMars Square, LLC (the last four digits of its federal tax identification number are 3404).

## TABLE OF CONTENTS

**ARTICLE I SUMMARY OF THE PLAN** ............................................................................... 1

    1.1    Overview of the Plan.. ...................................................................................... 1

    1.2    Exhibits and Plan Supplement. ...................................................................... 1

    1.3    Definitions.......................................................................................................... 1

    1.4    Voting Procedures............................................................................................. 2

**ARTICLE II HISTORY OF BUSINESS AND DISCLOSURES** ............................................ 2

    2.1    History and Background of the Debtors. ....................................................... 2

    2.2    Reasons for Filing. ........................................................................................... 2

    2.3    Sale of Debtors' Assets..................................................................................... 2

**ARTICLE III LIQUIDATION ANALYSIS**...................................................................... 3

    3.1    Liquidation Analysis. ....................................................................................... 3

**ARTICLE IV FINANCIAL PROJECTIONS**................................................................... 3

    4.1    Financial Projections......................................................................................... 3

**ARTICLE V DESIGNATION OF CLASSES OF CLAIMS** ............................................ 3

    5.1    Designation of Classes of Claims. .................................................................. 4

    5.2    Unclassified Claims. ......................................................................................... 4

    5.3    Classified Claims and Interests. ..................................................................... 4

**ARTICLE VI PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND
CERTAIN PRIORITY CLAIMS** ..................................................................... 4

    6.1    Administrative Claim Applications and Deadline. ...................................... 4

    6.2    Treatment of Administrative Claims.. .......................................................... 4

    6.3    Treatment of Professional Claims................................................................... 5

    6.4    Priority Tax Claims........................................................................................... 5

    6.5    Payment of Statutory Fees. ............................................................................. 5

**ARTICLE VII TREATMENT OF CLASSES OF CLAIMS AND INTERESTS** .................. 5

    7.1    Secured Claims.. ............................................................................................... 5

    7.2    General Unsecured Claims.. ............................................................................ 6

    7.3    Insider Claims. .................................................................................................. 6

    7.4    Equity Interests. ............................................................................................... 6

**ARTICLE VIII MEANS OF IMPLEMENTING THE PLAN**........................................... 6

    8.1    Continued Existence of the Liquidating Debtors.......................................... 6

8.2     Sale of Assets. ................................................................................................ 6

8.3     Establishment of Reserve Accounts .............................................................. 7

        8.3.1    Senior Claim Reserve.. .................................................................. 7

        8.3.2    Unsecured Distribution Reserve. .................................................. 7

8.4     Payment Administrator.. ................................................................................ 7

8.5     Compromises and Settlements.. .................................................................... 7

8.6     Corporate Action.. .......................................................................................... 7

8.7     Documents.. .................................................................................................... 8

8.8     Post-Effective Date Management.. ................................................................ 8

8.9     Preservation of Causes of Action and Rights.. ............................................. 8

8.10    Conditions to Effective Date .......................................................................... 9

8.11    Waiver of Conditions Precedent.. .................................................................. 9

**ARTICLE IX PROVISIONS FOR THE ASSUMPTION AND REJECTION OF
        EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 9**

9.1     General Rejection of Executory Contracts and Leases................................. 9

9.2     Claims for Damages....................................................................................... 10

**ARTICLE X RESOLUTION OF UNDETERMINED CLAIMS ........................................... 10**

10.1    Standing. ........................................................................................................ 10

10.2    Effect of Bar Date.. ....................................................................................... 10

10.3    Amendments to Claims; Claims Filed After the Confirmation Date................... 10

10.4    Objection Deadline. ...................................................................................... 10

10.5    Creditor Response to Objection.. ................................................................ 11

10.6    No Payment Pending Allowance. ............................................................... 11

10.7    Allowance of Claims...................................................................................... 11

10.8    Estimation of Claims..................................................................................... 11

**ARTICLE XI DISTRIBUTION PROCEDURES ................................................................ 11**

11.1    Record Date for Claims.. .............................................................................. 12

11.2    Form of Distributions..................................................................................... 12

11.3    Conditions to Distributions; Warranty of Entitlement................................. 12

11.4    Withholding Taxes.......................................................................................... 12

11.5    Setoffs. ........................................................................................................... 12

11.6    Rounding.......................................................................................................... 12

11.7    *De Minimis* Distributions............................................................................. 12

11.8    Undeliverable and Unclaimed Distributions..........................................................12

11.9    Disputed Distributions. ........................................................................................13

**ARTICLE XII EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION, AND EXCULPATIONS ...................................................................................... 13**

12.1    Notice of the Effective Date.. ..............................................................................13

12.2    Binding Effect of Plan. .......................................................................................14

12.3    Discharge of Debtors. .........................................................................................14

12.4    Injunction Against Interference with Plan. .........................................................14

12.5    Exculpations.......................................................................................................14

**ARTICLE XIII MODIFICATION OF THE PLAN......................................................... 15**

13.1    Amendments Prior to Confirmation Date. ..........................................................15

13.2    Amendments After Confirmation Date................................................................15

13.3    Effect on Claims.. ...............................................................................................15

**ARTICLE XIV RETENTION OF JURISDICTION ...................................................... 15**

14.1    Purposes. ............................................................................................................15

14.2    Exclusive Jurisdiction. .......................................................................................16

14.3    Abstention..........................................................................................................17

**ARTICLE XV GENERAL PROVISIONS ..................................................................... 17**

15.1    Certain Rights Unaffected...................................................................................17

15.2    Incorporation of Valuation Motion.....................................................................17

15.3    Automatic Stay...................................................................................................17

15.4    Reservation of Rights..........................................................................................17

15.5    Rights Under 1191(b).. .......................................................................................17

15.6    Headings. ............................................................................................................17

15.7    Severability. ........................................................................................................17

15.8    Governing Law. ..................................................................................................17

15.9    Successors and Assigns........................................................................................18

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-30032-sgj** |
| **1NONLY PHIMAR LLC** | § | |
| | § | **Chapter 11** |
| Debtors. | § | |
| | § | |

### DEBTORS' PLAN OF LIQUIDATION

   1Nonly PhiMar LLC ("1NOnly Phimar") and PhiMars Square, LLC ("Phimars Square," and collectively with 1NOnly Phimar, the "Debtors"), debtors and debtors-in-possession in the above referenced bankruptcy case, hereby file their proposed Plan of Liquidation (together with all amendment and modifications thereto, the "Plan"), pursuant to 11 U.S.C. §§ 1189 and 1190.

### ARTICLE I
### SUMMARY OF THE PLAN

   1.1 <u>Overview of the Plan</u>.  The Plan provides for the distribution of proceeds from a sale of the Debtors' assets conducted pursuant to section 363 of the Bankruptcy Code and payment of the Debtors' creditors as described herein. The Plan was developed by the Debtors and proposes, among other things, the means by which all Claims against the Debtors will be finally resolved and treated for distribution purposes, consistent with the provisions and priorities mandated by the Bankruptcy Code.  The Plan is essentially a new contract between the Debtors and its Creditors, proposed by the Debtors to its Creditors for approval.  Creditors approve or disapprove of the Plan by voting their Ballots on the Plan, if they are in a Class entitled to vote, and, if appropriate, by objecting to confirmation of the Plan.  However, the Plan can be confirmed by the Bankruptcy Court even if less than all Creditors or Classes accept the Plan and, in such an instance, the Plan will still be binding on those Creditors or Classes that reject the Plan.  Approval and consummation of the Plan will enable the Bankruptcy Case to be finally concluded.

   1.2 <u>Exhibits and Plan Supplement</u>.  All exhibits are incorporated into and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtors' counsel.  Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtors expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify, or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

   1.3 <u>Definitions</u>.  Definitions and Rules of Interpretation and Computation of Time are attached hereto as **Exhibit A**.

      1.4    <u>Voting Procedures</u>.  YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. Voting procedures and Ballots are attached hereto as **Exhibit B**.

**ARTICLE II**
**<u>HISTORY OF BUSINESS AND DISCLOSURES</u>**

      2.1    <u>History and Background of the Debtors.</u>  1Nonly Phimar is a single-member Texas limited liability company formed in 2019. Its sole member is Piermont Court, LLC, which is solely owned by HighGarden LLC., which is held by The Philip Levine Trust (the "Levine Trust"). Phimars Square is also a single-member Texas limited liability company formed in 2019, and its sole member is Piermont Court, LLC. Philip Levine ("Levine") has served as Manager of both Debtors since their formation in 2019. As of the Petition Date, 1Nonly Phimar owned a full-service hotel, the IBAN Dallas Park Central Hotel, a member of the Trademark Collection by Wyndham, located at 8051 Lyndon B. Johnson Freeway, Dallas, Texas 75251 (the "Hotel Property"), and conveniently located near the intersection of I-635 and State Highway 75 in Dallas, Texas.  The Hotel Property was last renovated in 2016, is well-maintained, and features 160 guest rooms, a restaurant and lounge, 3,980 square feet of meeting space, an outdoor pool, a fitness room, a business center, a market pantry, a guest laundry room, an outdoor patio and gazebo, and other amenities consistent with a midscale full-service hotel.  As of the Petition Date, Phimars Square owned a vacant parcel of commercial land of approximately 8,773 square feet, which is adjacent and connected to the Hotel Property. The parcel has an address of 8051 Lyndon B. Johnson Freeway, Dallas, Texas 75251 (the "Phimars Square Property," and collectively with the Hotel Property, the "Real Property") and includes access to the Lyndon B. Johnson Freeway access road.

      2.2    <u>Reasons for Filing</u>.  The Debtors Filed for relief under the SBRA provisions of Chapter 11 of the Bankruptcy Code ("Subchapter V") on January 1, 2024 (the "Petition Date"). Prior to the Petition Date, the Debtors experienced multiple setbacks related to a broken reservation system following a 2021 rebrand from the Best Western Plus Dallas Hotel & Conference Center to the IBAN Dallas Park Central Hotel under the Trademark Collection by Wyndham flag. Under the TMH Worldwide, LLC Membership Agreement (the "Franchise Agreement") between 1Nonly Phimar and TMH Worldwide, LLC ("Wyndham"), 1Nonly Phimar was obligated to participate in Wyndham's reservation system exclusively, with all software licensed and maintained by Wyndham or its approved suppliers. 1Nonly Phimar experienced many instances of the hotel simply not appearing in searches through Wyndham's reservation system, which also feeds to third-party booking sites such as Expedia, Travelocity, and other business streams. Despite multiple notices to Wyndham by 1Nonly Phimar and complaints to Wyndham, issues with the reservation system persisted, and the hotel underperformed substantially as a result of its lack of visibility. In December 2023, the Debtors' secured lender posted the Hotel Property for foreclosure. The Debtors filed this case to preserve their assets for the benefit of all creditors in light of pressure and foreclosure proceedings initiated by the Debtors' senior secured creditor, Pegasus Bank.

      2.3    <u>Sale of Debtors' Assets</u>.  A Purchase and Sale Agreement for the sale of substantially all of the Debtors' assets, dated March 12, 2024 (the "PSA"), and its terms were approved by order of the Bankruptcy Court entered on March 21, 2024 at Docket No. 106 (the "Sale Order").  The Sale Order and PSA, attached as Exhibit 1 to the Sale Order, and their terms are incorporated herein by this reference.  On March 26, 2024 (the "Closing Date"), the Debtors

consummated the sale of the Real Property, along with all Improvements thereon and certain Personal Property and Intangibles (as such terms are defined in the PSA), pursuant to the PSA and Sale Order. Alleged secured claims against the Real Property, including the claims of Pegasus Bank, the City of Dallas, Dallas County, and Richardson Independent School District, were paid from the proceeds of the sale of the Debtors' assets pursuant to the Sale Order (the "Sale Proceeds") on March 27, 2024, following the Closing Date.

## ARTICLE III
## LIQUIDATION ANALYSIS

3.1    Liquidation Analysis.   Under the Plan, Creditors of the Debtors will receive on account of their Claims property of a value, as of the Effective Date, that is not less than the Creditor would receive in a chapter 7 liquidation. The chart below graphically demonstrates the estimated and anticipated results of a liquidation of the Debtors if the case was converted to a case under Chapter 7 of the Bankruptcy Code. The Debtors notes that this estimation is by definition uncertain. The Debtors and its agents set forth what its best, educated, and good faith analysis of what the same would be.

| LIQUIDATION ANALYSIS | |
|---|---|
| Net Sale Proceeds | $1,990,237.19 |
| Other Cash and Cash Equivalents | $24,267.14 |
| Accounts Receivable | $3,237.65 |
| Total Assets for Distribution | $2,017,741.98 |
| Chapter 7 Cost of Administration (estimate) | $83,782.26 |
| Chapter 11 Costs of Administration (estimate) | $130,000.00 |
| Available for Secured Claims | $1,803,959.72 |
| Secured Claim Total | $158,278.06 |
| Available for Priority Claims | $1,645,681.66 |
| Priority Claims | $41,336.54 |
| Available for General Unsecured Claims | $1,604,345.12 |
| General Unsecured Claim Total* | $1,391,452.71 |
| Percent Distribution to Unsecured Creditors | 100.00% |

*Includes estimated rejection damages and claims disputed by the Debtors.

## ARTICLE IV
## FINANCIAL PROJECTIONS

4.1    Financial Projections.   The Debtors have analyzed their ability to make the payments specified in the Plan. Attached as **Exhibit C** hereto is a sources of the Net Sale Proceeds and the Debtor's other assets, along with a uses that outlines and estimates the amount of claims in each class.

## ARTICLE V
## DESIGNATION OF CLASSES OF CLAIMS

5.1 <u>Designation of Classes of Claims</u>. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

5.2    Unclassified Claims.

      Allowed Administrative Claims (Unimpaired)

      Priority Tax Claims (Unimpaired)

5.3    Classified Claims and Interests.

      Class 1:        Secured Claims (Unimpaired)

      Class 2:        Claims of General Unsecured Creditors (Impaired)

      Class 3:        Claims of Insiders (Impaired)

      Class 4:        Equity Interests (Unimpaired)

**ARTICLE VI**
**PAYMENT OF ADMINISTRATIVE CLAIMS**
**AND EXPENSES AND CERTAIN PRIORITY CLAIMS**

6.1 <u>Administrative Claim Applications and Deadline</u>. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' business which may be paid in the ordinary course of the Debtors' business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claim Bar Date: (i) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtors, the United States Trustee, and all other parties entitled to notice thereof. Failure to file and serve such application by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

6.2 <u>Treatment of Administrative Claims</u>. Except to the extent that the Debtors and the Holder of an Allowed Administrative Claim may otherwise agree in writing, a Holder of an Administrative Claim which is an Allowed Claim prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid on or before the date which is ten (10) days following the date on which the Administrative Claim becomes an Allowed Claim. For the

avoidance of doubt, the Sale Proceeds remaining following payment of the Allowed Secured Claims and other Assets of the Debtors shall be used first to pay all Allowed Priority Tax Claims, then to pay all Allowed Administrative Claims and Allowed Professional Claims, and then to pay Allowed General Unsecured Claims only after all Allowed Priority Tax Claims, Allowed Administrative Claims, and Allowed Professional Claims are paid in full.

6.3     <u>Treatment of Professional Claims</u>.  Professional Claims become Allowed the same as Administrative Claims in this Article (Section 6.1) and are treated the same as Administrative Claims in this Article (Section 6.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 6.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 6.1, but shall file such application by the Professional Claim Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of the this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement in the event of administrative insolvency and shall cease being subject to said disgorgement ten (10) days after the Professional Claim Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) upon written agreement between the Debtors and the Holder of a Professional Claim, such amount may be paid pursuant to this Plan upon terms agreed upon between the Debtors and the Professional.

6.4     <u>Priority Tax Claims</u>.  In full and final satisfaction of Allowed Priority Tax Claims, each Allowed Priority Tax Claim shall, unless otherwise agreed, be paid in full in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code by the later of (a) the Effective Date, or (b) ten (10) days after becoming an Allowed Priority Tax Claim.

6.5     <u>Payment of Statutory Fees</u>.  All fees due and payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, (b) to the United States Trustee, or (c) to the Subchapter V Trustee shall be paid by the Debtors on or before the Effective Date.  From and after the Effective Date, any fees and charges which are assessed under Chapter 123, Title 28, United States Code, in relation to the Bankruptcy Case shall be paid by the Liquidating Debtors as they become due.

## ARTICLE VII
## <u>TREATMENT OF CLASSES OF CLAIMS AND INTERESTS</u>

7.1     <u>Secured Claims</u>.  (Class 1) Class 1 consists of all Allowed Secured Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Secured Claim shall be paid by the

Liquidating Debtors, up to the Allowed amount of such Claim, by the later of (a) the Effective Date, or (b) ten (10) days after becoming an Allowed Secured Claim.

The Class 1 Secured Claims are Unimpaired, and they are not entitled to vote.

7.2     Generally Unsecured Claims. (Class 2) Class 2 consists of all Allowed General Unsecured Claims against the Debtors. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall be paid in full by the Liquidating Debtors, up to the Allowed amount of such Claim, by the later of (a) the Effective Date, or (b) ten (10) days after becoming an Allowed General Unsecured Claim.

The Class 2 Claims of the General Unsecured Creditors are Impaired, and are entitled to vote.

7.3     Insider Claims.  (Class 3) Class 3 consists of Holders of Claims against the Debtors held by Insiders, as such term is defined herein and in the Bankruptcy Code. Each Holder of an Allowed Class 3 Claim shall receive its Pro Rata share of any Debtor funds remaining following the payment in full to all Holders of Claims in Classes 1 and 2. For the avoidance of doubt, Chicken Island, LLC, the Levine Trust, and Levine shall not receive any distribution on account of their General Unsecured Claims against the Debtors unless and until all Holders of Claims in Classes 1 and 2 are paid in full.

The Class 3 Insider Claims are Impaired under the Plan, and the Holders of Allowed Claims in Class 3 are entitled to vote.

7.4     Equity Interests.  (Class 4) Class 4 consists of the Equity Interests in 1Nonly Phimar and Phimars Square, LLC. Holders of Equity Interests in 1Nonly Phimar shall retain their interests in 1Nonly Phimar and Phimars Square, LLC.

The Class 4 Claims of Equity Interests are Unimpaired, and they are not entitled to vote.

## ARTICLE VIII
## MEANS OF IMPLEMENTING THE PLAN

8.1     Continued Existence of the Liquidating Debtors.  Except as otherwise provided in this Plan, the Debtors shall continue to exist after the Effective Date as the Liquidating Debtors in accordance with the applicable laws of the state of Texas. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement, the Liquidating Debtors may, in its their sole discretion, take such action as permitted by applicable law and the Liquidating Debtors' organizational documents as the Liquidating Debtors may determine is reasonable and appropriate.

8.2     Sale of Assets.  The Sale Order and PSA, filed at Docket No. 106, and their terms are incorporated herein by this reference.  On March 26, 2024, the Debtors sold the Real Property, along with all Improvements thereon and certain Personal Property and Intangibles (as such terms are defined in the PSA), pursuant to the PSA and Sale Order. On March 27, 2024, alleged secured claims against the Real Property, including the claims of Pegasus Bank, the City of Dallas, Dallas

County, and Richardson Independent School District (the "Real Property Secured Claims"), were paid from the proceeds of the sale of the Debtors' assets pursuant to the Sale Order. Following payment of the Real Property Secured Claims, net sale proceeds in an amount of $1,990,237.19 (the "Net Sale Proceeds") were deposited into the Debtor's Debtor-In-Possession account with Veritex Community Bank (the "DIP Account").

8.3     Establishment of Reserve Accounts.  The Liquidating Debtors shall establish each of the Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Debtor).

8.3.1     Senior Claim Reserve.  Prior to the Effective Date, the Liquidating Debtors shall establish the Senior Claim Reserve by depositing from the Net Sale Proceeds the amount estimated to be necessary to satisfy all Allowed Secured Claims, Allowed Administrative Claims (including Allowed Professional Claims) and Allowed Priority Claims. If any Cash remains in the Senior Claim Reserve after payment in full of all Allowed Administrative Claims (including Allowed Professional Claims) and Allowed Priority Claims, such excess Cash shall be transferred to the Unsecured Distribution Reserve.

8.3.2     Unsecured Distribution Reserve.  Prior to the Effective Date, the Debtors shall establish the Unsecured Distribution Reserve by depositing the remainder of the Net Sale Proceeds, after funding the Senior Claim Reserve.

8.4     Payment Administrator.  Notwithstanding the provisions of 11 U.S.C. § 1194(b), the Liquidating Debtors shall be the payment administrator and shall be the party responsible for distributing all payments outlined and specified in the Plan.

8.5     Compromises and Settlements.  Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of certain Claims and Causes of Action arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises or settlements provided in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein. More specifically, and without limiting this provision, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 to settle any Claims and the treatment provided for them in this Plan.

8.6     Corporate Action.   The entry of the Confirmation Order shall constitute authorization for the Debtors to take or cause to be taken all corporate actions necessary or

**DEBTORS' PLAN OF LIQUIDATION**                                                    **Page 7**

appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. The management of the Liquidating Debtors are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith in the name of and on behalf of the Debtors and Liquidating Debtors.

8.7   <u>Documents</u>.  All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on or before the Effective Date unless an earlier date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Bankruptcy Court for determination.  Upon the Effective Date, or as soon as practicable thereafter, the Bankruptcy Court shall have resolved said issues, and all such documents shall be binding on the Debtors, the Creditors, and all other parties hereto.

8.8   <u>Post-Effective Date Management</u>.  The Liquidating Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, for the purposes of satisfying its obligations under the Plan. The Liquidating Debtors shall be managed by Philip Levine.

8.9   <u>Preservation of Causes of Action and Rights</u>.  All Causes of Action, rights of setoff and other legal and equitable defenses of the Debtors or their Estates are preserved unless expressly released, waived, or relinquished under the Plan or the Confirmation Order and shall vest in the Liquidating Debtors. No Person may rely on the absence of a specific reference in the Plan to any Cause of Action against them as an indication that a Cause of Action will not be pursued against them.

**Further, unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or**

**in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

Unless expressly released by the Plan or by an order of the Bankruptcy Court, the Debtors may hold claims against a Holder of a Claim or Equity Interest, including but not limited to, the following claims and Causes of Action, all of which shall be preserved:

- Preference claims under section 547 of the Bankruptcy Code;

- Fraudulent transfer and other avoidance claims arising under section 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;

- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;

- Claims and Causes of Action against TMH Worldwide, LLC and its affiliates, successors, or assigns;

- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition; and

- Counterclaims asserted in current litigation.

8.10   <u>Conditions to Effective Date</u>.   The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied in accordance with the terms hereof:

(a)     The Confirmation Order shall have become a Final Order; and

(b)     All actions, documents, and agreements necessary to implement the Plan shall have been effectuated or executed.

8.11   <u>Waiver of Conditions Precedent</u>.   Except as otherwise provided herein, any action required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. The Debtors reserves the right to waive the occurrence of the conditions precedent set forth in <u>Section 8.10</u> hereof or to modify any of such conditions precedent. Any such written waiver or such conditions precedent may be effectuated at any time, without notice or leave or order of the Bankruptcy Court and without any other formal action other than proceeding to consummate the Plan.

## ARTICLE IX
## PROVISIONS FOR THE ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1   <u>General Rejection of Executory Contracts and Leases</u>.   All executory contracts and unexpired leases of the Debtors (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly assumed or rejected on or before the Effective Date, or not otherwise specifically treated in this Plan or in the Confirmation Order, shall be deemed to have

been rejected as of the date of the Closing Date. The listing by the Debtors in their Schedules of a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease of the Debtor, or that the Debtors or their Estate have any liability thereunder.

9.2    <u>Claims for Damages</u>.  Unless otherwise specified in a separate Final Order of the Bankruptcy Court, any Claim based upon rejection of an executory contract or unexpired lease under the Plan must be Filed with the Bankruptcy Court and served on the Liquidating Debtors such that the Claim is actually received within thirty (30) days of the Effective Date. Notwithstanding the foregoing, and for the sake of clarity, nothing in this section is meant to modify any prior Order of the Bankruptcy Court related to a rejection of an executory contract or unexpired lease, and to the extent a date is specified in such order, such date shall be the deadline by which Claims based upon rejection must be Filed.  All Allowed Claims for rejection damages, unless otherwise specifically provided for or addressed in this Plan, shall be treated as Class 2 General Unsecured Claims.  Any Claim not Filed within such time will be forever barred from assertion against the Debtors, Liquidating Debtors, and their Estates.

**ARTICLE X**
**RESOLUTION OF UNDETERMINED CLAIMS**

10.1    <u>Standing</u>.  In addition to all other parties that may otherwise have standing to object to claims, the Liquidating Debtors shall have specific standing to object to the allowance of said Claims.

10.2    <u>Effect of Bar Date</u>.  In accordance with Bankruptcy Rule 3003(c), any entity, Person, or Creditor who: (i) was not listed in the Schedules, (ii) holds a Contingent Claim, (iii) holds an Unliquidated Claim, or (iv) holds a Disputed Claim, and did not file a proof of Claim before the Bar Date shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

10.3    <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>.    Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be Filed after the Confirmation Date without prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any Claim Filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Liquidating Debtors.

10.4    <u>Objection Deadline</u>.  Within thirty (30) days from the Effective Date, unless such date is extended by order of the Bankruptcy Court after notice and hearing, the Liquidating Debtors may file with the Bankruptcy Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains. Unless arising from an Avoidance Action, any proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Liquidating Debtors may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Bankruptcy Case or grants any Creditor any

greater rights with respect to a late-filed Claim than such Creditor otherwise has.  Unless otherwise ordered by the Bankruptcy Court, the Liquidating Debtors shall litigate to judgment, settle, or withdraw objections to contested Claims.

10.5    <u>Creditor Response to Objection</u>.  With respect to any objection to a Claim when such objection is Filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Liquidating Debtors and the objecting party no later than thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

10.6    <u>No Payment Pending Allowance</u>.  Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

10.7    <u>Allowance of Claims</u>.  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Liquidating Debtors make any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will be due and payable on the date which is thirty (30) days following the date of the order allowing such Claim, less the amounts paid by the Debtors prior to such a determination.

10.8    <u>Estimation of Claims</u>.  The Debtors or the Liquidating Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtors or the Liquidating Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated subsequently and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**ARTICLE XI**
**<u>DISTRIBUTION PROCEDURES</u>**

**DEBTORS' PLAN OF LIQUIDATION**                                                     **Page 11**

11.1    <u>Record Date for Claims</u>.  The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court enters its order approving the Plan. For purposes of Distribution to Holders of Allowed Claims, the Liquidating Debtors will rely on the Claims Register maintained by the Bankruptcy Court except to the extent a notice of transfer of Claim has been Filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001.

11.2    <u>Form of Distributions</u>.  Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer at the option of the Liquidating Debtors.

11.3    <u>Conditions to Distributions; Warranty of Entitlement</u>.  Each and every Creditor who receives and accepts a Distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Liquidating Debtors that such Creditor is the lawful Holder of the Allowed Claim, is authorized to receive the Distribution, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the Distribution.

11.4    <u>Withholding Taxes</u>.  In connection with this Plan, to the extent applicable, the Liquidating Debtors shall comply with all tax withholding and reporting requirements validly imposed on them by any governmental authority, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Liquidating Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, payment of applicable withholding taxes from a Distribution, and conditioning a Distribution upon receipt of necessary tax reporting information from the Holder of the Claim.

11.5    <u>Setoffs</u>.  Except as otherwise expressly provided in the Plan and pursuant to Sections 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Liquidating Debtors may, upon application and approval by the Bankruptcy Court, setoff against any Distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights, or Causes of Action held by the Liquidating Debtors against the Holder of the Allowed Claim or in relation to the Allowed Claim, *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Liquidating Debtors of any such claims, rights, or Causes of Action. If the Liquidating Debtors fails to setoff against a Claim and seeks to collect from the Holder of such Claim after Distribution to that Holder pursuant to the Plan, the Liquidating Debtors shall be entitled to full recovery on the claims of the Debtors or their Estates, if any, against the Holder of such Claim.

11.6    <u>Rounding</u>.  Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

11.7    <u>*De Minimis* Distributions</u>.  Notwithstanding any provision of the Plan to the contrary, no Distribution of less than five dollars ($5.00) shall be made on an Allowed Claim from the Liquidating Debtors, unless such Distribution shall be a final Distribution.

11.8    <u>Undeliverable and Unclaimed Distributions</u>.  Any Person that is entitled to receive a Distribution of Cash under the Plan but fails to cash a check within ninety (90) days of its issuance

shall be entitled to receive a reissued check from the Liquidating Debtors for the amount of the original check, without any interest, if such Person requests the Liquidating Debtors to reissue such check and provides such documentation as may be requested to verify that such Person is entitled to such check within one year of the check's issuance date. After the expiration of the applicable deadline to request a check to be reissued, the Person who fails to cash a check within ninety (90) days of its issuance shall not be entitled to receive any Distribution under the Plan on account of the Claim that was attempted to be paid. If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating Debtors as undeliverable, no further Distributions will be made to such Holder unless and until the Liquidating Debtors are notified in writing of such Holder's current address, *provided*, *however*, a claim for an undeliverable Distribution must be made within one hundred eighty (180) days following the date of issuance of the original Distribution. After such date, all unclaimed property shall revert to the Liquidating Debtors for further disbursement in accordance with the Plan, and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged, disallowed, and forever barred notwithstanding any federal or state escheatment laws to the contrary. The Liquidating Debtors have no obligation to independently undertake any investigation to determine the whereabouts of any Holder of an Allowed Claim.

11.9    Disputed Distributions.  No Distribution will be made on account of a Disputed Claim unless and until it becomes Allowed.  Upon a request for estimation, the Bankruptcy Court will determine what amount of Cash from the initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan, pursuant to Section 502 of the Bankruptcy Code or applicable law, in which case, the amount so determined by the Bankruptcy Court shall be deemed the Allowed amount of such Disputed Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum amount to which such Claim may be ultimately Allowed.  Upon motion by a party in interest, the Bankruptcy Court may determine the appropriate amount of any reserves required in connection with a Disputed Claim.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, or a Distribution thereon, the Liquidating Debtors may either (a) establish a reserve account for deposits of Disputed Claims until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (b) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the Disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Liquidating Debtors may have in relation to such interpleader action, *provided, however,* that once segregated or interplead, interest shall cease to accrue on an Allowed Claim.

## ARTICLE XII
## EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION, AND EXCULPATIONS

12.1    Notice of the Effective Date.  On or before ten (10) Business Days after occurrence of the Effective Date, the Liquidating Debtors shall mail or cause to be mailed to all Holders of Claims and Equity Interests a notice that informs such Holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) the Administrative Claim Bar Date; (d) Professional Claim Bar Date; and (e) such other matters that the Liquidating Debtors deems appropriate.

12.2    Binding Effect of Plan.  Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtors, the Liquidating Debtors, all Creditors, all Equity Interest Holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan.

12.3    Discharge of Debtors.  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtors shall be deemed discharged and released upon the completion of all payments specified in the Plan to the extent permitted by Sections 1192 and 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is Filed or deemed Filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors.  Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against either the Debtors or the property of the Debtors, to the extent it relates to a Claim discharged.

12.4    Injunction Against Interference with Plan.  Upon the Effective Date, all Holders of Claims, all Holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees, and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

12.5    Exculpations.  Neither the Debtors' professionals, nor any of its respective present officers, employees, agents, representatives, advisors, affiliates, underwriters, or investment bankers, nor any other professional persons employed by any of them (collectively, the "Exculpated Parties"), shall have or incur any liability to any Person for any act taken or omission in connection with or related to formulating, negotiating, implementing, confirming, or consummating the Plan, except for willful misconduct. The Exculpated Parties shall have no liability, except for willful misconduct, to the Debtors, any Creditor, any Equity Interest Holder, and any other party in interest in the Bankruptcy Case, or any other Person for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XIII
## MODIFICATION OF THE PLAN

13.1    <u>Amendments Prior to Confirmation Date</u>.  The Debtors may modify or amend the Plan prior to Confirmation, and the Plan, as modified or amended, shall become the new Plan of Liquidation.

13.2    <u>Amendments After Confirmation Date</u>.  The Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Bankruptcy Court, after notice and hearing, confirms the Plan, as modified. Further, in the event that the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), then the Liquidating Debtors may (subject to the restrictions specified in 11 U.S.C. § 1193(c)) modify the plan after substantial consummation.

13.3    <u>Effect on Claims</u>.  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XIV
## RETENTION OF JURISDICTION

14.1    <u>Purposes</u>.  Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case for the following purposes:

    i.    to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

    ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

    iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which either of the Debtors are a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv.    to hear and determine any and all actions initiated by the Liquidating Debtors, whether by motion, complaint, or otherwise;

    v.    to determine any and all applications, motions, adversary proceedings, and contested matters pending before the Bankruptcy Court on the Confirmation Date or Filed or instituted after the Confirmation Date;

vi.     to modify this Plan or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, this Plan or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii.    to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii.   to allow, disallow, determine, liquidate, or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

ix.     to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement, and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x.      to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, or vacated;

xii.    to determine such other matters as may arise in connection with this Plan or the Confirmation Order;

xiii.   to enforce all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case;

xiv.    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv.     to determine all issues relating to the Claims of Wyndham and Claims of the Debtors against Wyndham;

xvi.    to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvii.   to enter a Final Order and final decree closing the Bankruptcy Case.

14.2    <u>Exclusive Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation, or administration of this Plan, or the Confirmation Order, and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

**DEBTORS' PLAN OF LIQUIDATION**                                                                                          **Page 16**

14.3    <u>Abstention</u>.  If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Case, including the matters set forth in this Article XIV, this Article XIV shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XV**
**<u>GENERAL PROVISIONS</u>**

15.1    <u>Certain Rights Unaffected</u>.  Except as otherwise provided herein, any rights or obligations which the Debtors' Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

15.2    <u>Incorporation of Valuation Motion</u>.  To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including the value of any lien, security interest, or encumbrance treated by this Plan, *provided, however,* that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Bankruptcy Case.

15.3    <u>Automatic Stay</u>.  The automatic stay provided in Section 362 of the Bankruptcy Code shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order and shall terminate on the Effective Date.

15.4    <u>Reservation of Rights</u>.  The Plan shall have no force or effect unless and until the Effective Date occurs.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

15.5    <u>Rights Under 1191(b)</u>.  If all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10), and (15) of that section, are met, the Debtors will seek confirmation under the cram down provisions of Section 1191(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1191(b) in that event.

15.6    <u>Headings</u>.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions, or interpretations of this Plan.

15.7    <u>Severability</u>.  If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

15.8    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements, and instruments executed in connection with this Plan (except to the extent such documents, agreements, and

instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

15.9    <u>Successors and Assigns</u>.  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

Dated: April 1, 2024                                    **1NONLY PHIMAR, LLC**

                                                        */s/ Philip Levine*
                                                        By: Philip Levine,
                                                        Its Manager


Dated: April 1, 2024                                    **PHIMARS SQUARE, LLC**

                                                        */s/ Philip Levine*
                                                        By: Philip Levine,
                                                        Its Manager


OF COUNSEL

*/s/ Megan F. Clontz*
Jason P. Kathman
Texas Bar No. 24070036
Megan F. Clontz
Texas Bar No. 24069703
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com


**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

Liquidating Debtors' Address for Notice:

1Nonly PhiMar LLC
PhiMars Square LLC
Attn: Philip Levine
8330 Lyndon B. Johnson Fwy, Suite B1180
Dallas, TX 75243
Email: plevine@tyvanhill.com

Counsel for Liquidating Debtors Address for Notice:

Jason P. Kathman
Megan F. Clontz
Spencer Fane LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
Email: jkathman@spencerfane.com
Email: mclontz@spencerfane.com

# EXHIBIT A

## Defined Terms

| | |
|---|---|
| *"1NOnly Phimar"* | 1Nonly PhiMar, LLC |
| *"Administrative Claim"* | A claim for costs and expenses of administration during the Bankruptcy Case pursuant to section 328, 330, 363, 364,(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred from and after the Petition Date and through the Effective Date or preserving the Estate and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services); (b) Fee Claims; (c) Restructuring Expenses; and (d) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-1401. |
| *"Administrative Claim Bar Date"* | The date that is thirty (30) days after the Effective Date, unless not a Business Day, in which case it will be the first Business Day thereafter. |
| *"Allowed"* | With reference to any Claim or Interest, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance has been interposed within the time period set forth in the Plan, or (iii) as to which an objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined by Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (c) any Claim or Interest expressly allowed under the Plan; *provided, however,* that notwithstanding the foregoing, the Liquidating Debtors shall retain all claims and defenses with respect to Allowed Claim that are reinstated or otherwise unimpaired pursuant to the Plan. |
| *"Avoidance Action"* | Any and all rights, claims or actions which the Debtors may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan. |
| *"Ballot"* | The official ballot for voting on the Plan solicited with the Plan. |
| *"Bankruptcy Case"* | The chapter 11 bankruptcy case of Higgins AG, LLC, initiated by filing of a voluntary petition for bankruptcy pursuant to 11 U.S.C. § 301 in the United States Bankruptcy Court for the Northern District of Texas. |
| *"Bankruptcy Code"* | Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended |
| *"Bankruptcy Court"* | The United States Bankruptcy Court for the Northern District of Texas |

| *"Bankruptcy Rules"* | The Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Bankruptcy Case, and any local rules of the Bankruptcy Court. |
|---|---|
| *"Bar Date"* | The Bar Date is the last date on which proofs of Claim or proofs of Equity Interest may be timely Filed against the Debtors unless otherwise extended by stipulation filed with the Court or Final Order of the Bankruptcy Court, which deadline is March 11, 2024 for general unsecured claims and July 1, 2024 for governmental units. |
| *"Business Day"* | Any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a). |
| *"Causes of Action"* | Any Avoidance Action, claim, cause of action of any kind, suit, controversy, right to payment, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of the Debtors, whether listed in the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Disclosure Statement, the Plan, the Confirmation Order, any pleading in the Bankruptcy Case, or any other disclosure, statement, correspondence or communication providing informal notice of such Cause of Action. |
| *"Cash"* | Legal tender of the United States of America |
| *"Claim"* | A "claim," as defined in section 101(5) of the Bankruptcy Code, against a Debtor or Debtors |
| *"Claim Register"* | The register of proofs of claim filed in the Chapter 11 Case, maintained by the Clerk of the United States Bankruptcy Court for the Eastern District of Texas. |
| *"Class"* | Any group of Claims or Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code. |
| *"Closing"* | The closing of the March 26, 2024 sale of substantially all of the Debtors' assets, pursuant to the PSA and Sale Order. |
| *"Closing Date"* | March 26, 2024 |
| *"Confirmation"* | The entry on the docket of the Bankruptcy Case of the Confirmation Order. |
| *"Confirmation Hearing"* | The hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be continued, rescheduled or delayed. |
| *"Confirmation Order"* | The order of the Bankruptcy Court confirming the Plan in the Bankruptcy Case. |
| *"Contingent Claim"* | Any Claim listed in the Debtors' schedules that is listed as "contingent." |

| | |
|---|---|
| *"Creditor"* | Any Person that is the holder of a Claim that arose on or before the Petition Date, or a Claim of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. |
| *"Debtors"* | 1Nonly PhiMar, LLC and PhiMars Square, LLC, each a "Debtor" |
| *"DIP Account"* | 1Nonly Phimar's Debtor-In-Possession account held by Veritex Community Bank. |
| *"Disposable Income"* | Has the meaning specified in 11 U.S.C. § 1191(d). |
| *"Disputed"* | With respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a proof of claim or interest for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation before the date of Confirmation in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order. |
| *"Distribution"* | The distribution of Cash from the Liquidating Debtors pursuant to this Plan. |
| *"Effective Date"* | The date that all of the conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms. |
| *"Equity Interest"* | An existing membership, stock, partnership, and/or equity interest in the Debtors including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred) of the Debtors, together with any warrants, options, other derivative securities, or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto. |
| *"Equity Interest Holder"* | Any person holding an Equity Interest. |
| *"Estates"* | The estates of the Debtors created under section 541 of the Bankruptcy Code. |
| *"Exculpated Parties"* | Means the Debtors' professionals, present officers, employees, agents, representatives, advisors, affiliates, underwriters or investment bankers, and any other professional persons employed by any such parties. |
| *"Filed"* | Means file, filed or filing with the clerk of the Bankruptcy Court, or its authorized designee in the Bankruptcy Case. |
| *"Final Order"* | Any order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument, or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing, or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing, or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law. |

| *"Franchise Agreement"* | TMH Worldwide, LLC Membership between the 1Nonly Phimar and TMH Worldwide, LLC |
|---|---|
| *"General Unsecured Claims"* | Unsecured Claims not otherwise classified under the Plan. |
| *"Governmental Unit"* | Any transnational, domestic, or foreign federal, state or local governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority. |
| *"Holder"* | Any entity that is the holder of a Claim, including but not limited to (a) a Claim that arose on or before the Petition Date, (b) a Claim against the Debtors' Estates of any kind specified in Section 502(g), Section 502(h) or Section 502(i) of the Bankruptcy Code or (c) an Administrative Claim. |
| *"Hotel Property"* | The IBAN Dallas Park Central Hotel, located at 8051 Lyndon B. Johnson Freeway, Dallas, Texas 75251. |
| *"Improvements"* | The buildings, structures, fixtures, and other improvements on the Real Property. |
| *"Impaired"* | When used with respect to any Claim, interest or Class, "impaired" has the same meaning as that contained in Section 1124 of the Bankruptcy Code. |
| *"Insider"* | Has the same meaning as set forth in Section 101(31) of the Bankruptcy Code. |
| *"Insider Claims"* | Claims held by Insiders against the Debtors. |
| *"Intangibles"* | All of Debtors' right, title and interest in and to (i) all assignable contracts and agreements relating to the upkeep, repair, maintenance or operation of the Real Property, Improvements, or Personal Property which shall extend beyond the Closing Date, including specifically, without limitation, all assignable equipment leases and (ii) all assignable existing warrantees and guarantees (express or implied) issued to a Debtor in connection with the Improvements or the Personal Property. |
| *"Interest"* | Any ownership interest in the Debtors, including all partnership interests, common stock or units, preferred stock or units, membership interest, or other instrument evidencing an ownership interest in the Debtors, whether or not transferable, and including any option, warrant, or right, contractual or otherwise, to acquire any such interests in the Debtors that existed immediately before the Effective Date. |
| *"Levine"* | Philip Levine |
| *"Levine Trust"* | The Philip Levine Trust |
| *"Liquidating Debtors"* | The legal entities that shall survive the Debtors as of the Confirmation Date. |
| *"Liquidating Plan"* | The Debtors' proposed Plan of Liquidation, together with all amendment and modifications thereto. |

| | |
|---|---|
| *"Net Sale Proceeds"* | The portion of the Sale Proceeds remaining following payment of the Real Property Secured Claims. |
| *"Other Priority Claim"* | Any Claim entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code (other than an Administrative Expense Claim or a Priority Tax Claim). |
| *"Person"* | Any individual, entity, or Governmental Authority of any nature whatsoever, specifically including any individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization, or any other entity. |
| *"Personal Property"* | All equipment, fixtures, machinery, building materials, and other personal property owned and used by the Debtors in connection with the operation, management, and maintenance of the Real Property and the Improvements, including, without limitation, all furniture, bedding sheets, covers, pillows, appliances, camera systems, key card systems, keys, licenses, permits (to the extent assignable), books, records, plans and specifications, architectural and engineering drawings, contract rights, consents, and other intangible property pertaining to the Real Property and Improvements. |
| *"Petition Date"* | The date of commencement of the Bankruptcy Case, January 3, 2023. |
| *"Phimars Square"* | PhiMars Square, LLC |
| *"Plan"* | The Debtors' proposed Plan of Liquidation, together with all amendment and modifications thereto. |
| *"Phimars Square Property"* | The parcel of land located at 8051 Lyndon B. Johnson Freeway, Dallas, Texas 75251. |
| *"Priority Claims"* | Allowed Claim entitled to priority pursuant to Section 507 of the Bankruptcy Code. |
| *"Priority Tax Claim"* | Any secured or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code. |
| *"Pro Rata"* | The proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims or Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Class under the Plan. |
| *"Professional"* | Any Person employed in the Bankruptcy Case pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code. |
| *"Professional Claim"* | Any Claim that is Filed by a Professional pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code, and includes any claims filed by a trustee appointed pursuant to 11 U.S.C. § 1183. |

| *"Professional Claim Bar Date"* | The date that is thirty (30) days after the Effective Date, unless not a Business Day, in which case it will be the first Business Day thereafter. |
|---|---|
| *"PSA"* | The Purchase and Sale Agreement for the sale of substantially all of the Debtors' assets, dated March 12, 2024 and attached to the Sale Order entered on March 21, 2024 at Docket No. 106. |
| *"Real Property"* | The Hotel Property and the Phimars Square Property, collectively. |
| *"Real Property Secured Claims"* | Secured Claims against the Real Property, including the claims of Pegasus Bank, the City of Dallas, Dallas County, and Richardson Independent School District. |
| *"Released Party"* | Means the Holders of Claims or Equity Interests which do not elect to opt-out of the releases set forth in Sections 12.6 and 12.7 of the Plan. |
| *"Releasing Party"* | Means the Holders of Claims or Equity Interests which do not elect to opt-out of the releases set forth in Sections 12.6 and 12.7 of the Plan. |
| *"Reserve Accounts"* | The Senior Claim Reserve and the Unsecured Distribution Reserve. |
| *"Restructuring Expenses"* | Those Cash aspect of any Cure Costs, Priority Claims, and Administrative Claims (including the reasonable fees and expense of the Company's counsel). |
| *"Sale Order"* | The order of the Bankruptcy Court, entered on March 21, 2024 at Docket No. 106, approving the PSA and its terms and authorizing sale of the Debtors' assets. |
| *"Sale Proceeds"* | The proceeds of the March 26, 2024 sale of substantially all of the Debtors' assets, pursuant to the PSA and Sale Order. |
| *"SBRA"* | Means the Small Business Reorganization Act. |
| *"Secured Claim"* | A Claim, to the extent (a) secured by property of the Estates, the amount of which is equal to or less than the value of such property (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Company, or (ii) as determined by Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code. |
| *"Secured Taxing Authorities"* | Those entities and creditors holding secured claims related to *ad valorem* property taxes associated with the Property. |
| *"Senior Claim Reserve"* | Either (a) a segregated account established by the Liquidating Debtors, or (b) a book entry account, in the sole discretion of the Liquidating Debtors, and which shall be funded on the Effective Date from the Net Sale Proceeds to pay the estimated amount of all unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Professional Claims. |
| *"Subchapter V"* | Subchapter V of Chapter 11 of the United States Bankruptcy Code, codified in 11 U.S.C. §§ 1181-1195. |

| *"Undetermined Claim"* | Any Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim; or (d) a claim that is an Unliquidated Claim or Contingent Claim. |
|---|---|
| *"United States Trustee"* | The United States Trustee for Region 6 serving the federal judicial districts established for the Northern and Eastern Districts of Texas. |
| *"Unimpaired"* | Means not Impaired. |
| *"Unliquidated Claim"* | Any Claim that is listed in the Debtors' schedules as "unliquidated." |
| *"Unsecured Claim"* | Any Claim against the Debtors which is not an Administrative Claim, Priority Claim, or Secured Claim. |
| *"Unsecured Distribution Reserve"* | Either (a) a segregated account established by the Liquidating Debtor, or (b) a book entry account, in the sole discretion of the Liquidating Debtor, from which Distributions to holders of Class 2 and 3 Claims shall be made in accordance with the Plan. |
| *"UST"* | The United States Trustee. |
| *"Wyndham"* | TMH Worldwide, LLC |

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-30017-sgj** |
| **1NONLY PHIMAR LLC,** *et al.*[1] | § | |
| | § | **Chapter 11** |
| Debtors. | § | **(Jointly Administered)** |

## BALLOT FOR ACCEPTING OR REJECTING
## <u>DEBTORS' PLAN OF LIQUIDATION</u>

> **ELIGIBLE HOLDERS OF CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE TO THE VOTING AGENT (AS DEFINED BELOW). YOUR VOTE MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT (AS DEFINED BELOW) ON OR BEFORE _____, 2024, 4:00 P.M. (CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>").**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Debtors' Plan of Liquidation* (as amended, modified, or supplemented from time to time, the "**Plan**") in connection with the case (the "**Bankruptcy Case**") commenced by 1Nonly PhiMar LLC ("**1NOnly Phimar**") and PhiMars Square, LLC ("**Phimars Square**," and collectively with 1NOnly Phimar, the "**Debtors**") under subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

A copy of the Plan should have accompanied this Ballot. If you do not have a copy of the Plan, you may obtain a copy from the Debtors' counsel by calling 972-324-0372 or by emailing Luzmarina Vargas (the "**Voting Agent**") at <u>lvargas@spencerfane.com</u>. You should review the Plan in its entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

### <u>Voting Deadline: _____, 2024, 4:00 p.m. (CDT)</u>

Each Creditor holding a Claim which entitles the Creditor to vote on the Plan has been provided a Ballot along with a copy of the Plan. If a Creditor holds Claims in more than one Class entitled to vote under the Plan, the Creditor may indicate his vote in each Class with the same Ballot, or the Creditor may request an additional Ballot for each additional Class it is entitled to vote. The Ballot is to be used by the Creditor to accept or reject the Plan and to make any elections that are available to the Creditor as indicated by the Ballot.

---

[1] The Debtors in these chapter 11 cases are 1Nonly PhiMar, LLC (the last four digits of its federal tax identification number are 4226) and PhiMars Square, LLC (the last four digits of its federal tax identification number are 3404).

To ensure that a Ballot is deemed timely and considered by the Voting Agent, which shall be the Debtors' attorneys, Spencer Fane LLP, a Creditor must: (a) carefully review the Ballot and the instructions set forth thereon; (b) provide all of the information requested on the Ballot; (c) sign the Ballot; and (d) return the completed and signed Ballot to the Voting Agent by the Voting Deadline. The "**Voting Deadline**" is **4:00 p.m. (CDT), on _____, 2024**. Therefore, in order for a Ballot to be counted for voting purposes and any applicable election, the completed and signed Ballot must be received at the address specified below by no later than the Voting Deadline.

**DEADLINE:   Must be <u>RECEIVED</u>**
**by 4:00 p.m., Central Time on _____, 2024**

Addressed to:
Spencer Fane LLP
Attn: Luzmarina Vargas
5700 Granite Parkway, Suite 650
Plano, Texas 75024

## Creditors Solicited to Vote

Each Creditor holding a Claim in a Class that is Impaired under the Plan is being solicited to vote on the Plan. As to any Claim for which a proof of claim was filed and as to which an objection has been lodged, however, if such objection is still pending as of the Voting Deadline, the Creditor's vote associated with such Claim will not be counted to the extent of the objection to the Claim, unless and to the extent the Bankruptcy Court temporarily allows the Claim upon motion by such Creditor in an amount determined by the Bankruptcy Court. Such motion must be heard and determined by the Bankruptcy Court prior to the date and time scheduled by the Bankruptcy Court for a hearing determining the confirmation of the Plan. Further, the Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection of the Plan was not solicited or procured in good faith or in accordance with the provision of the Bankruptcy Code.

## Definition of Impairment

Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims is Impaired under a Plan <u>unless</u>, with respect to each Claim of such Class, the plan does at least one of the following two (2) things:

1.   leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim; or

2.   notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:

   (a)   cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified

in section 365(b)(2) of the Bankruptcy Code;

(b)     reinstates the maturity of such claim as it existed before the default;

(c)     compensates the holder of such Claim for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(d)     does not otherwise alter the legal, equitable, or contractual rights to which such claim entitles the holder of such Claim.

The Plan identifies the classes of Creditors and Interests that the Debtors believe are Impaired or Unimpaired under the Plan.  The Plan cannot and does not change the law on what is an Impaired class and, to the extent a Creditor disagrees with the Debtors' identification of Impaired or Unimpaired classes, the Creditor may object to the Plan and the Bankruptcy Court will decide the dispute.

Classes 2 and 3 of the Plan are Impaired. Therefore, the Holders of Claims in those Classes are being solicited for votes in favor of the Plan.

With respect to the foregoing, the Debtors specifically reserve their rights to determine and contest, if necessary: (a) the Impaired or Unimpaired status of a Class under the Plan; and (b) whether any Ballots cast by Creditors holding Claims within such a Class should be counted for purposes of confirmation of the Plan.

## Votes Required for Class Acceptance

Pursuant to the Bankruptcy Code, a Class of Claims under the Plan shall be deemed to have accepted the Plan if the Plan is accepted by Creditors holding at least two-third (2/3) in amount and more than half (1/2) in number of the Claims within such Class who are entitled to vote and who actually vote using a properly completed and signed Ballot which is returned to the Voting Agent by no later than the Voting Deadline.  It is important to note that, pursuant to the Bankruptcy Code, a Class vote in favor of the Plan will be binding even on those creditors in the Class who vote against the Plan, so long as the requisite voting percentages are obtained in favor of the Plan.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN

**THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE XII OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## <u>Specific Considerations in Voting</u>

While the Plan provides for certain payments after the Effective Date, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is Allowed. A Claim will be Allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Bankruptcy Court at a regular, evidentiary hearing and Allowed in full or in part or disallowed. While the Debtors bear the principal responsibility for Claim objections, any interested party, including Creditors, may file Claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Please refer to the attached list to see how your claims have been classified.**

**If your ballot is not received by SPENCER FANE LLP, Attn: Luzmarina Vargas, 5700 Granite Parkway, Suite 650, Plano, Texas 75024 on before _____, 2024 at 4:00 p.m. (CDT), and such deadline is not extended, your vote will not count as to either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

## PLEASE READ THE ATTACHED VOTING INFORMATION AND
## INSTRUCTION BEFORE COMPLETING THIS BALLOT

PLEASE COMPLETE ITEMS 1, 2, AND 3. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED AND COMPLETED IN THE SPACE PROVIDED, YOUR VOTE AND/OR ELECTION MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Principal Amount of Claim.** The undersigned hereby certifies that, as of **_____, 2024,** (the "**Voting Record Date**"), the undersigned was the holder (or the authorized signatory of such holder) of a Claim against a Debtor in the aggregate amount inserted into the box below.

- Amount of Claim

$

**Item 2. Votes on the Plan.** Please vote to either accept or to reject the Plan with respect to your Claim. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

The undersigned, a holder of a Class ____ Claim[2] votes to (check <u>one</u> box):

[  ] **Accepts** the Plan                    [  ] **Rejects** the Plan

**Item 3. Acknowledgments.** By signing this Ballot, the holder of Claim voted in this Ballot acknowledges receipt of the Plan and other applicable solicitation materials, and certifies that (i) it has the power to vote to accept or reject the Plan, (ii) it was the holder (or is entitled to vote on behalf of the holder) the Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.

---

[2] <u>Classification of Claims</u>
Class 1:  Secured (Unimpaired)
Class 2:  Claims of General Unsecured Creditors (Impaired)
Class 3:  Claims of Insiders (Impaired)
Class 4:  Equity Interests (Unimpaired)

**BALLOT FOR ACCEPTING OR REJECTING**
**DEBTORS' PLAN OF LIQUIDATION**                                        **PAGE 5 OF 6**

Dated: _____

Name of Holder of Claim: _____

Signature:      _____

_____
(print)

_____
Title (if corporation or partnership)

Address:   _____

_____

Telephone: _____

RETURN THIS BALLOT TO:

SPENCER FANE LLP
Attn: Luzmarina Vargas
5700 Granite Parkway, Suite 650
Plano, Texas 75024

# EXHIBIT C

### Sources and Uses for Confirmation Cash

**Sources**

| | |
|---|---:|
| Net Sale Proceeds | $1,990,237.19 |
| Other Cash and Cash Equivalents (as of 3/31/2024) | $24,267.14 |
| Accounts Receivable (as of 3/31/2024) | $3,237.65 |
| **Total Assets for Distribution** | **$2,017,741.98** |

**Uses**

| | |
|---|---:|
| ***Senior Claim Reserve*** | |
| Chapter 11 Costs of Administration* | $130,000.00 |
| Secured Claims | $158,278.06 |
| Priority Claims | $41,336.54 |
| ***Unsecured Distribution Reserve*** | |
| General Unsecured Claims** | $1,391,452.71 |
| **Total Uses, Excluding Insider Claims** | **$1,721,067.31** |

| | |
|---|---:|
| **Remaining Assets** | **$296,674.67** |

*Includes estimated amounts for Administrative Claims. Debtors reserve all rights to object to Administrative Claims asserted in this Bankruptcy Case, and such Claims shall be determined pursuant to the procedures set forth in Article VI of the Plan.

**Includes estimated Claims related to the Debtors' rejection of certain executory contracts and Claims disputed by the Debtors. Debtors reserve all rights to object to Claims asserted in this Bankruptcy Case, and such Claims shall be determined pursuant to the procedures set forth in Article X of the Plan.